# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

SANDRA BLACK,                          )
                                       )
          Plaintiff,                   )
                                       )
v.                                     )          Case No. 1:19-CV-307
                                       )
NAOMI FRIEDRICHSEN,                    )
ERIKA HOLLIDAY (LIDDICK),              )
HUNTERS RUN APARTMENTS                 )
AND OWNERS, and INTERSTATE REALTY      )
MANAGEMENT CO.,                        )
                                       )
          Defendants.                  )

## OPINION AND ORDER

This matter is before the Court on the motion to dismiss filed by Defendants Hunters Run

Apartments, LLP, and Erika Holliday[1] on October 30, 2019. Motion to Dismiss (ECF 14);

Memorandum in Support (ECF 15). Plaintiff Sandra Black filed a response in opposition to the

motion on November 18, 2019. "Plaintiff's Response and Motion to Deny Defendants' Motion to

Dismiss" (ECF 17).[2] The Defendants filed a reply brief on November 22, 2019. Reply Brief (ECF

19). Also on November 22, Black filed a document she titled "Added Clarification of Existing

Statements of Claim" (ECF 20). For the reasons set forth below, the motion to dismiss (ECF 14)

is DENIED. The Court also directs the U.S. Marshal to endeavor to serve Defendant Naomi

---

[1] The Defendants note that Plaintiff misspelled Defendant Holliday's name as "Holiday."
Defendants' Memorandum, p. 1. Accordingly, the Court uses the former spelling in this order.

[2] Also on November 18, Black filed a pleading she titled "Motion to Deny Defendants'
Motion to Dismiss (ECF 18). This is not a motion at all, but rather a superfluous request that the
Court deny Defendants' motion. The pleading adds nothing in the way of argument (and the
Defendants, for that reason, have not filed a response to it). Accordingly, **the Clerk of the Court
is instructed to amend the docket to indicate that Plaintiff's filing at ECF 18 is "Plaintiff's
Additional Response to Defendants' Motion to Dismiss."**

Friedrichsen with a copy of the summons, a copy of Black's Complaint, and a copy of this Order within 60 days from the date of this Order. The Court directs counsel for Defendants Michaels Management-Affordable LLC, f/k/a Interstate Realty Management Company and Erika Holliday to file a notice or brief with the Court, within 14 days from the date of this Order, addressing the matter of the appearance filed by Michaels Management, as set forth in the Conclusion below.

## BACKGROUND

Sandra Black filed a Complaint against the Defendants in this Court on May 20, 2019, in case number 1:19-CV-222. On May 24, 2019, the Court dismissed that case for lack of subject-matter jurisdiction. On June 12, 2019, Black filed a motion for reconsideration. The Court denied that motion, also, but determined that Black's motion for reconsideration was actually a new Complaint alleging discrimination under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, a cause of action she had not asserted in her first case. Accordingly, the Court entered an order on July 10, 2019, instructing the Clerk of the Court to docket the new Complaint (and Black's accompanying application to proceed *in forma pauperis*) as a new case. On July 12, 2019, the Court entered an order granting Black's motion to proceed *ifp* and directing the U.S. Marshals Service to serve summonses and copies of the Complaint on the Defendants. Court Order (ECF 3).

Black and her adult son entered into a lease agreement with Defendant Hunter's Run Apartments on November 23, 2015. Black alleges in her Complaint that the Defendants discriminated against her on the basis of her race, African-American, by falsely accusing her of numerous lease violations over the course of several years in an attempt to force her to vacate the apartment she rented from the Defendants in Marion, Indiana. Complaint (ECF 1). Black insists

2

that the Defendants brought an unfounded eviction proceeding against her in state court. *Id*.

Black asserts that the Defendants harassed her by accusing her of numerous lease violations and

that white residents of Hunters Run Apartments were treated more favorably. She contends that

"[b]oth I and [a] Hispanic woman and several other blacks were all targeted for wrongful

removal and no longer live there. To my knowledge no whites are removed wrongfully. Good

white tenants are never wrongly evicted, but good black tenants are evicted. Whites are allowed

privileges that blacks are not allowed." *Id*., p. 2.

Sandra Black's dispute with the Defendants has been ongoing for several years and has

involved proceedings in state court, the Indiana Civil Rights Commission, and now this federal

court. The legal battle between the parties began in 2017 in state court when Hunter's Run

Apartments "filed a Complaint for 'Possession of Real Property and Past Due Rent' in the Grant

County Superior Court of Indiana, Small Claims Division, Case No. 27D03-1705-SC-000517."

*Id*., Defendants' Memorandum in Support of Motion to Dismiss (ECF 15), pp. 1-2. The

Defendants state that "Hunter's Run brought forth its Complaint alleging it was entitled to

possession of the Property because Plaintiff allowed unauthorized occupants to live at the

Property in violation of the Lease Agreement entered into by the Parties." *Id*., p. 2. Black

responded to that eviction proceeding by filing "a Request for Trial by Jury, transferring the

matter to the Grant County Superior Court's plenary docket and invoking the Indiana Rules of

Trial Procedure." *Id*., p. 2. "On June 8, 2017 . . . the Grant County Superior Court held a

preliminary possession hearing and on June 14, 2017, the . . . Court entered an order denying

Hunter's Run's Request for a Prejudgment Order of Possession." *Id*. Black then filed "a Request

for Emergency Order to Allow Additional Occupants to the Household[.]" *Id*., p. 3. "On August

2, 2017, Hunter's Run filed a Joint Agreement of Parties which allowed Plaintiff and unauthorized occupants to reside at the Property until September 15, 2017, in exchange for Plaintiff agreeing to turn in keys and vacate the Property on or before September 15, 2017." *Id.* (citing Defendants' Exhibit F, Joint Agreement (ECF 15-6); Grant County Court Order Granting Joint Agreement (ECF 15-7)).

Meanwhile, as the Grant County eviction case played out, Black "filed a Complaint with the Indiana Civil Rights Commission ('ICRC') against Hunter's Run Apartments, alleging discrimination on the basis of race in violation of the Indiana Civil Rights law, the Indiana Fair Housing Act . . . and Title VII of the Civil Rights Act of 1968 (42 U.S.C. § 3601 *et seq*. [the Fair Housing Act])." *Id.* (citing Defendants' Exhibit I, (ECF 15-9)). Black filed her ICRC claim on May 26, 2017. *Id.* The Defendants note that "[o]n January 2, 2018, the ICRC issued a Notice of Finding that no probable cause existed and Plaintiff's Complaint was dismissed. . . . On March 26, 2018, the full ICRC adopted the Finding and [Black's] Complaint was dismissed with prejudice with no further right to appeal." *Id.*, p. 4 (citing Defendants' Exhibit K, Finding of ICRC (ECF 15-11)). Following the adverse finding by the ICRC, Black turned to this Court to continue to seek relief for what she insists were racially motivated violations of the Fair Housing Act.

In lieu of an Answer to Black's Complaint, Defendants Erika Holliday (Liddick) and Hunter's Run Apartments LP filed their motion to dismiss, arguing that Black's Complaint must be dismissed because it was filed beyond the applicable statute of limitations and because it fails to state a claim. Defendants' Memorandum, generally. Defendants Naomi Friedrichsen and Interstate Realty Management Company did not join in the motion, file answers, or otherwise

respond to Black's Complaint. Counsel for Holliday and Hunter's Run, in their motion to dismiss, insist that Friedrichsen and Interstate Realty were never served with summons in this case, that the time for doing so under Federal Rule 4 has passed, and that Friedrichsen and Interstate Realty should be dismissed from the case for that reason. In their memorandum in support of their motion to dismiss, Defendants Holliday and Hunter's Run state that "[t]o date, under information and belief, Michaels Management-Affordable LLC f/k/a Interstate Realty Management Company and Naomi Friedrichsen have not been served a copy of the summons and complaint in [this case]. . . . It has been over 90 days since Plaintiff's New Complaint was filed. Thus, pursuant to FRCP 4(m) Michaels Management-Affordable LLC f/k/a Interstate Realty Management Company and Naomi Friedrichsen must be dismissed from the action." Defendants' Memorandum (ECF 15), p. 5.

The Defendants, or more specifically the *movants*–Holliday and Hunter's Run–argue in their motion that Black's claims should be dismissed because 1) they are barred by the applicable 2-year statute of limitations, and 2) Black's FHA claim fails as a matter of law because she cannot show that she was constructively evicted. The Defendants argue that "Plaintiff entered into an agreement, one she proposed, with Hunter's Run wherein Hunter's Run agreed to make an exception to its guest policy by allowing unauthorized occupants to reside at the Property until September 15, 2017 (later extended to September 21, 2017) in exchange for Plaintiff agreeing to vacate the Property by said date. . . . This Joint Agreement negates Plaintiff's contention that she was constructively evicted as Plaintiff voluntarily offered to move out of the Property in exchange for Hunter's Run permitting her to violate its guest policy under the Lease." *Id*., pp. 8-

12.[3] The Defendants also argue that "[t]he ICRC Proceeding does not toll the statute of limitations on Plaintiff's New Complaint[,]" (*id*., p. 10) and that Black cannot avoid the statute of limitations based on a continuing violation theory (*id*., p. 11). According to the Defendants, "[w]ithout the applicability of the continuing violation theory and/or the tolling provisions under 42 U.S.C. § 3613(a)(1)(B), Plaintiff's New Complaint must be dismissed as it fails to state a timely claim upon which relief can be granted." *Id*.

## STANDARD OF REVIEW

Holliday and Hunter's Run bring their present motion pursuant to Federal Rule 12(b)(6). "'A motion to dismiss pursuant to Rule 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted.'" *Savoy v. BMW of N. Am., LLC*, 313 F.Supp.3d 907, 913 (N.D. Ill. 2018) (quoting *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015)). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must

---

[3] The main dispute between the parties at that point in time was the fact that Black had her son and his children living in the apartment with her, even though the lease agreement limited the number of occupants allowed to reside there.

allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although Rule 8(a) requires only a "short and plain statement" of the plaintiff's claims, to survive a motion to dismiss a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint that contains factual allegations that are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 677 (quoting *Twombly*, 550 U.S. at 557). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "'Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Tobey v. Chibucos*, 890 F.3d 634, 644-46 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 679). Finally, and importantly in this case, "a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'tests the sufficiency of the complaint, not the merits of the case.'" *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *2 (N.D. Ill. Oct. 9, 2019) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012)).

The Court is also mindful of the well-settled principle that, when interpreting a *pro se* petitioner's complaint, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). "A document

filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). On the other hand, "a district court should not 'assume the role of advocate for the *pro se* litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (quoting *Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir.1998), *cert. denied,* 525 U.S. 1151 (1999)).

## DISCUSSION

### I. Failure to serve summons.

The first issue the Court must address is the argument presented by the movants, Holliday and Hunters Run, asserting that the two *non-movant* Defendants, Friedrichsen and Interstate Realty, should be dismissed from this case because they were not timely served with summons.

While Interstate Realty Management Company itself has not appeared, an appearance was filed on behalf of "Michaels Management-Affordable, LLC f/n/a[4] Interstate Realty Management Company and Hunter's Run Apartments LP (improperly pleaded as Hunter's Run Apartments)." Appearance of Counsel (ECF 7). Also, Michaels Management, together with Hunter's Run, filed a "Defendants' Corporate Disclosure Statement" pursuant to Fed.R.Civ.P. 7.1, which reads in its entirety as follows:

> Pursuant to Federal Rule of Civil Procedure 7.1, Defendants, Michaels Management Affordable, LLC f/n/a Interstate Realty Management Company and Hunter's Run Apartments LP (improperly pleaded as Hunter's Run Apartments), make the following disclosures:
>
> 1. Michaels Management-Affordable, LLC f/n/a Interstate Realty Management Company states that it does not have a parent corporation, and that no publicly

---

[4] The acronym "f/n/a" is obviously a scrivener's error and should be "f/k/a."

held corporation owns ten percent (10%) or more of its stock.

2. Hunter's Run Apartments LP states that it does not have a parent corporation, and that no publicly held corporation owns ten percent (10%) or more of its stock.

Corporate Disclosure Statement (ECF 8). So, while Interstate Realty itself has not appeared or joined in the motion to dismiss, its purported successor-in-interest, Michaels Management, *has* appeared in this case. Nonetheless, the Defendants insist that "[t]o date, under information and belief, Michaels Management-Affordable LLC f/k/a Interstate Realty Management Company and Naomi Friedrichsen have not been served a copy of the summons and complaint in [this case]. . ." and should be dismissed as Defendants. So, the two movants, Holliday and Hunter's Run, argue that the two other named Defendants, Interstate Realty and Friedrichsen, neither of which has filed any motion, should be dismissed because they were not served with process.

The Defendants are correct that, as a general rule, a plaintiff, including a *pro se* plaintiff, must serve each defendant with a summons and complaint, and failing to do so in the time permitted by Federal Rule 4 is grounds for dismissal of the unserved defendants. That Rule states, in relevant part, as follows:

> **Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (boldface in original). Holliday and Hunter's Run focus on the first sentence of the Rule, which mandates that a court "*must* dismiss" defendants who have not been served within 90 days of the filing of the Complaint. But their argument ignores the second sentence, which states that if a plaintiff can establish good cause for the failure to serve, the court "*must*

extend" the deadline for doing so. More importantly, the Defendants' argument completely ignores the fact that Black was granted permission to proceed *in forma pauperis* in this case, which changes the analysis regarding service of process. The law on this point is well-established. Rule 4 expressly provides: "At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. *The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.*" Fed.R.Civ.P. 4(c)(3) (italics added); *see* 28 U.S.C. § 1915(d) (stating that where a plaintiff is proceeding *in forma pauperis*, "the officers of the court shall issue and serve all process, and perform all duties in such cases"). "In cases involving plaintiffs proceeding *in forma pauperis*, the Marshals, upon order of the Court, are authorized to serve the summons and the complaint. *See* 28 U.S.C. § 1915(c); *see also Boudette v. Barnett*, 923 F.2d 754, 757 (9th Cir. 1991). A *pro se* plaintiff proceeding *in forma pauperis* is entitled to rely on the Marshals for service, and such plaintiff's action should not be dismissed for failure to effect service because of the Marshals failure to perform their duties." *Pember v. Ryan*, 2014 WL 3397735, at *2-4 (D. Ariz. July 11, 2014) (citing *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990)). Another district court, citing and relying in part on Seventh Circuit case law, addressed this issue and explained as follows:

> When, as here, a plaintiff proceeds IFP, "[s]pecial rules govern the procedure for service of process." [*Lindsey v. U.S. R.R. Retirement Bd.*, 101 F.3d 444, 446 (5th Cir. 1996)]. After an IFP plaintiff takes "reasonable steps to identify the defendant(s)," the Court issues process and directs the USMS to serve the defendants. *Id.* [A plaintiff] "need furnish 'no more than the information necessary to identify the defendant.'" *Rice v. MgBakor*, 2008 WL 4791660, at *2 (N.D. Tex. Oct. 29, 2008) (Lindsay, J.) (quoting *Antonelli v. Sheahan*, 81 F.3d 1422, 1426 (7th Cir. 1996); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990)). The USMS must use due diligence in serving the defendants on behalf of

an IFP plaintiff. *Id*. If the USMS is provided with a business address that is insufficient for service upon a prison employee, due diligence requires the USMS to search for personal addresses for the defendants and serve the individuals at those addresses. *Id*. (citing *Ellibee* [*v. Leonard*], 226 F. App'x [351, 359 (5th Cir. 2007)]). In this case, the USMS made only one attempt at service, which was deficient. The USMS did not exercise due diligence to search for personal addresses for the . . . Defendants, and the Court did not direct the USMS to do anything differently when the . . . Defendants first raised the issue of insufficient service in October 2017. . . . In view of the circumstances, the Court finds Plaintiff's failure to properly serve the . . . Defendants was the fault of the USMS and the Court. The Court thus finds that Plaintiff has made a sufficient showing of good cause for the defects in service. Accordingly, the Court should DENY the . . . Defendants' Motion to Dismiss, to the extent it is based on Fed.R.Civ.P. 12(b)(2), (b)(4) or (b)(5). Further, the Court should, in the exercise of its discretion, extend the period for effecting service of the summons and original complaint upon the . . . Defendants to the date which is 30 days after the Court enters an Order Accepting these Findings, Conclusions, and Recommendation. The Court should direct the USMS to use due diligence to search for personal addresses for each of the . . . Defendants and to effect proper service before the expiration of the extended deadline.

*Minze v. King*, 2018 WL 5885544, at *4-5 (N.D. Tex. Aug. 30, 2018), report and recommendation adopted as modified, 2018 WL 6329776 (N.D. Tex. Dec. 3, 2018). *See also*, *Roache v. Fischer*, 2019 WL 6827296, at *5 (N.D.N.Y. Dec. 13, 2019) ("Where, as here, a plaintiff has been authorized by the Court to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, the United States Marshals Service is appointed to effect service of process of the summons and complaint on his behalf. . . . Thus, once a plaintiff has identified the defendants, the Marshals Service must undertake to locate them and accomplish the service. The Marshals Service is obligated to effect service of process in accordance with the Federal Rules of Civil Procedure and, if necessary, the Marshals Service must make multiple attempts at service."). And another court very recently explained as follows:

It is well-settled law that the court "will not penalize Plaintiff for having relied on the Clerk of Court and the U.S. Marshals Service to effect service of process on

his behalf." *Adkins v. Jackson*, 2018 WL 1279338, at *2-3 (W.D.N.C. Mar. 12, 2018) (citing *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010)) (declining to penalize *in forma pauperis* plaintiff for U.S. Marshals Service's delay in effecting service of process); *Carroll v. Fentress Cnty. Sheriff's Dep't*, 2012 WL 140417 at *2 (M.D. Tenn. Jan. 18, 2012) (magistrate report and recommendation denying motion to dismiss for insufficient service of process, noting that once prisoner plaintiffs have adequately identified the defendants to be served, "responsibility for service of process rest[ed] with the United States Marshals Service. If defendants were not properly served, plaintiffs cannot be held responsible"), adopted, 2012 WL 847775 (M.D. Tenn. Mar. 12, 2012); *see also Swanson v. Gaston Cty. Sheriff's Dep't*, 2019 WL 236730, at *3 (W.D.N.C. Jan. 15, 2019); . . . *see also Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir. 1990) ("[H]aving provided the necessary information to help effectuate service, plaintiff should not be penalized by having his or her action dismissed for failure to effect service where the U.S. Marshal or the court has failed to perform the duties required of each of them under 28 U.S.C. § 1915(c) and Rule 4 of the Federal Rules of Civil Procedure."); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990) (stating that the Marshal's failure to effect service of process for an *in forma pauperis* plaintiff is "automatically good cause" within Rule 4(j)).

*Johnson v. Schneider Elec.*, 2020 WL 520940, at *1 (W.D.N.C. Jan. 31, 2020). It is also well-established that "[o]bjections to service of process are waived by voluntary appearance and participation in a suit. Fed.R.Civ.P. 12(h). *See McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 907 (5th Cir. 1995) ("[A] person waives the defense of defective service if he voluntarily submits himself to the court's jurisdiction by appearing before it and allowing it to adjudicate his rights."). *Preferred Chiropractic, LLC v. Hartford Cas. Ins. Co.*, 2011 WL 2149091, at *2 (S.D. Ill. May 31, 2011) (italics added). Again, in this case, while Interstate Realty itself has not appeared, its admitted corporate successor-in-interest did file an appearance.

Black was granted permission to proceed *in forma pauperis* and the Court directed the Marshal's office to effectuate service. The docket reflects that the Marshal's Service sent copies of the Complaint and Summons by certified mail to Interstate Realty Management and Naomi Friedrichsen, but the summons sent to Interstate Realty was returned unclaimed. *See* ECF 12

(summons returned unexecuted by U.S. Marshal). Friedrichsen has not appeared nor was the summons issued to her returned–either served or unserved. Prior to the issuance of summons, this Court sent all Defendants a "Notice of Lawsuit and Request to Waive Service of Summons." *See* ECF 4. Those waivers were not returned. So while the record does not indicate that service was achieved on Friedrichsen or Interstate Realty, that failure cannot be visited upon Black, and is not grounds for dismissing Black's claims against either party at this juncture. Instead, the Court concludes that additional efforts must be made to obtain proper service of process on Friedrichsen and Interstate Realty (assuming that the appearance by Interstate's professed successor-in-interest, Michaels Management, does not satisfy service as to Interstate).

"In determining whether there has been sufficient service, the facts are viewed in the light most favorable to the nonmoving party." *Mikesell v. Taco Bell Corp.*, 300 F.R.D. 329, 331 (S.D. Ind. 2014) (citing *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). "When proper service is not accomplished . . . the text of Rule 4 instructs the court to 'dismiss the action without prejudice against the defendant or order that service be made within a specified time,' unless the plaintiff 'shows good cause for the failure,' whereby the court 'must extend the time for service for an appropriate period.'" *Id.* (quoting Fed.R.Civ.P. 4(m)).

The lack of service on Defendants Friedrichsen and (arguably) Interstate Realty presents a messy situation that needs to be cleaned up, but it does not warrant dismissal of Black's claims against those Defendants at this juncture and, therefore, the motion to dismiss is denied as to Friedrichsen and Interstate Realty. The Court will extend the time to effect service on Defendant Friedrichsen and directs counsel for the Defendants to file a notice or brief with the Court addressing the appearance of Michaels Management-Affordable, as set forth in the Conclusion

below.

**II. Statute of limitations.**

The Defendants assert that Black failed to file her Complaint within the applicable two-year statute of limitations set forth in 42 U.S.C. § 3613(a)(1)(A). Once again, the premise of the Defendants' argument is correct–FHA claims are subject to a two-year statute of limitations–but in this case the limitations period was tolled while Black's claims were being adjudicated before the Indiana Civil Rights Commission. The general rule regarding the timeliness of FHA claims is as follows:

> [T]he FHA[] provides that a civil enforcement action must be filed "not later than 2 years after the occurrence or the *termination* of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A) (emphasis added). "The italicized language was added to the FHA in 1988 to codify the continuing violation doctrine . . . : '[W]here a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice.'"

*Access Living of Metro. Chicago, Inc. v. City of Chicago*, 372 F.Supp.3d 663, 672 (N.D. Ill. 2019) (internal citations omitted).

The Defendants contend that the latest date on which Black could base her claims is June 14, 2017, when the Grant County state court denied Hunter's Run's eviction action.[5] Since

---

[5] The statute of limitations issue is fact-specific, or rather, "date"-specific. To determine when the statute of limitations in this case began to run, when it expired, and whether it was tolled for a period of time, the Court must consider the dates on which several events occurred. To do that, the Court must consider many of the dates on which certain events and actions associated with the preceding state court case occurred. For that reason, the Defendants contend that this Court "must take judicial notice of [the] State Court proceeding. . . . [T]he Court may consider the Grant County Superior Court filings in Case No. 27D03-1706-PL-000014 . . . without converting Defendants' Motion to Dismiss into a motion for summary judgment. . . . Matters of public record can fall within the category of judicially-noticeable facts. . . . Determinations to be judicially noticed include 'proceeding[s] in other courts, both within and

14

Black's Complaint in this case was not filed until July 10, 2019, the Defendants argue that her claims are barred by the statute of limitations. The Defendants argue as follows:

> The State Court denied Hunter's Run's Request for a Preliminary Order of Possession on June 14, 2017. . . . Thus, the earliest proposed date in which Plaintiff alleges FHA violations in support of her constructive eviction claim is June 14, 2017. Again, any conduct by Defendants in violation of the FHA is time barred unless Plaintiff can link said conduct to violations occurring after July 10, 2017.

Defendants' Memorandum, p. 9. The Defendants maintain that the administrative proceeding before the Indiana Civil Rights Commission did not toll the statute of limitations in this case. They acknowledge that "[t]he computation of the FHA's two-year statute of limitations does not include any time during which an administrative proceeding based on such discriminatory practice under the FHA is pending." *Id.*, p. 10 (citing 42 U.S.C. § 3613(a)(1)(B)). But, according to the Defendants, the fact that Black filed an ICRC complaint on May 26, 2017, which "was

---

outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.'" Defendants' Memorandum in Support, p. 7 (internal citations omitted). Accordingly, the Defendants insist, "[h]ere, the Court must take judicial notice of documents filed in the State Court proceeding, the ICRC proceeding and those filed before this Court in Case No. 1:19-CV-222[.] All the documents attached to the instant Motion to Dismiss are permitted to be considered by this Court under Seventh Circuit case precedent as they are directly related to the allegations in Plaintiff's New Complaint. Specifically, the attached documents evidence that Plaintiff's untimely New Complaint fails to state a claim in which relief can be granted." *Id.* The Defendants state that the Court should take judicial notice of the dates on which the state proceedings (court and ICRC) occurred, because doing so supports their argument that Black's Fair Housing Act claim is untimely. The Court agrees that the documents attached to the Defendants' motion to dismiss, many of which were also filed or referenced by Black, involve state court and state administrative agency proceedings that are directly related to the issues in the present case and, more importantly, the issues presented by the motion to dismiss. Accordingly, the Court will consider those documents without converting the motion to dismiss to a motion for summary judgment. *Deicher v. City of Evansville*, 545 F.3d 537 (7th Cir. 2008); *see also 4601 Corp. v. Town of Cicero*, 220 F.3d 522, 527 n.4 (7th Cir. 2010) (noting that district courts are permitted to take judicial notice of state court proceedings); *520 South Michigan Ave. Associates, Ltd.*, 549 F.3d 1119, 1138, n. 14 (7th Cir. 2008) (proper for court to take judicial notice of matters of public record, reports of administrative bodies, and state court decisions).

dismissed by the ICRC with prejudice on March 26, 2018" does not make her Complaint in this case timely. The Defendants insist that "Plaintiff's ICRC Complaint was based upon an isolated phone call with Hunter's Run on December 5, 2016[,] wherein Plaintiff alleged she was harassed and threatened with eviction by Hunter's Run. . . . Plaintiff's ICRC Complaint did not entail any of the allegations presented in Plaintiff's New Complaint. In Plaintiff's New Complaint filed before this Court, well over a year after the ICRC's final Order, Plaintiff alleges new discrimination claims following the State Court's June 14, 2017[,] Order. The alleged FHA violations by Defendants occurred while Plaintiff's ICRC Complaint was pending; yet, Plaintiff did not move to incorporate said allegations into her Complaint. Accordingly, Plaintiff cannot now attempt to use the ICRC Proceeding, which pertained to a single alleged event, to argue that the statute of limitations does not bar her FHA claim set forth in her New Complaint. *Id.*, pp. 10-11. The Defendants maintain that "[i]t is therefore undisputed that Plaintiff was aware of any alleged FHA violation as of May 2[6], 2017, the date she filed her Complaint of Discrimination [with the ICRC]. Plaintiff has slept on her rights regarding any claim relevant to the ICRC Proceeding and now cannot be permitted to revive her stale claims by attempting to toll the statute of limitations on her New Complaint." *Id.*

The Fair Housing Act provides, as the Defendants point out, that "[t]he computation of such 2-year period *shall not include* any time during which an administrative proceeding under this subchapter was pending[.]" 42 U.S.C. § 3613(a)(1)(B). So while "the statute of limitations under the FHA is two years . . . there are the added variables of the tolling of claims during administrative proceedings[.]" *Novak v. State Parkway Condo. Ass'n*, 2015 WL 1058014 (N.D. Ill. March 6, 2015). *See also*, *Intermountain Fair Hous. Council v. Orchards at Fairview Condo.*

*Ass'n, Inc.*, 2011 WL 162401, at *5 (D. Idaho Jan. 18, 2011) ("The Court finds that, pursuant to

42 U.S.C. § 3613(a)(1)(B), [plaintiff's] claims were tolled between July 17, 2007 and January 24,

2008, while its administrative complaints were pending with HUD."); *Thomas v. San Francisco*

*Housing Auth.*, 2018 WL 1184762, *5 (N.D. Cal. March 7, 2018), *aff'd*, 765 F.App'x 368 (9th

Cir. 2019) ("The statute of limitations is tolled during an administrative proceeding regarding a

complaint 'based on [a] discriminatory housing practice.'") (quoting 42 U.S.C. 3613 (a)(1)(B));

*Tabi v. Lazovsky*, 2018 WL 7457933, at *7 (C.D. Cal. Nov. 7, 2018) ("Prior to commencing a

court action, . . . a plaintiff may, but is not required to, file an administrative complaint 'not later

than one year after an alleged discriminatory housing practice has occurred or terminated[.]' 42

U.S.C. §§ 3610(a)(1)(A)(i), 3613(a)(2). The FHA statute of limitations is tolled while any related

administrative proceeding is pending. 42 U.S.C. § 3613(a)(1)(B).").

By way of example, the district court in *Thomas* explained as follows: "Here, the

[defendant] alleges that the last occurrence of a failure to accommodate occurred in 'June 2013.'

. . . [Plaintiff] filed her first HUD complaint three months later, on September 6, 2013. . . . Thus,

following the resolution of her HUD claim, [plaintiff] had twenty-one months remaining [in]

which to file a cause of action in district court. HUD dismissed the complaint on August 4, 2014.

. . . Therefore, [plaintiff] had until May 2016 (twenty-one months from August 2014) to file her

claim." *Thomas*, 2017 WL 878064, *8. Another district court explained as follows:

> Plaintiff filed this action on December 31, 2015. . . . Ordinarily, she would be
> barred from bringing a religious discrimination claim based on events that
> occurred prior to December 31, 2013. However, she filed her initial housing
> complaint with HUD on March 8, 2013, which tolled the time for her to file an
> action in federal court. HUD's final letter of determination regarding that
> complaint is dated May 20, 2015. Plaintiff also filed a second HUD complaint on
> April 17, 2015, and there is no information in the record regarding the resolution

of that complaint. Therefore, Plaintiff's time to file an action was tolled beginning March 8, 2013, until at least the date that Plaintiff filed this action. Accordingly, Defendants are correct that Plaintiff was entitled to include claims in this action relating to events that occurred, at the earliest, on March 8, 2011.

*Lloyd v. Presby's Inspired Life*, 251 F.Supp.3d 891, 903 (E.D. Pa. 2017). Finally, in *Davis v. Habitat for Humanity of Bay Cty., Inc.*, 2012 WL 3137689, *2 (N.D. Fla. Aug. 2, 2012), the court concluded that the plaintiffs' claim was timely because "the statute of limitations was tolled from September 1, 2009 through January 27, 2010, a total of 149 days. The cause of action accrued on January 22, 2009 . . . and the statute of limitations expired two years plus 149 days from that date, which was June 20, 2011. Plaintiffs filed their complaint on June 17, 2011. Accordingly, Plaintiffs' complaint was timely filed pursuant to the Fair Housing Act."

In the present case, it is undisputed that Black's administrative proceeding before the ICRC was pending from May 26, 2017, until January 2, 2018, when the ICRC issued its Notice of Finding of no probable cause or, arguably, until March 26, 2018, when the ICRC issued its final order dismissing Black's claim with prejudice. Either way, that period of time is *excluded* from the computation of the applicable statute of limitations, meaning that Black's Complaint in this case was filed *less than* two years after the administrative proceeding concluded. The limitations period was tolled from May 26, 2017, until at least January 2, 2018. As a result, Black had two years from January 2, 2018, in which to file her Complaint in this Court. Since she filed the current Complaint on July 10, 2019, it appears to be timely.

The Defendants insist, however, that Black's ICRC complaint did not toll the limitations period because it "did not allege any other discriminatory conduct on behalf of Hunter's Run but for the conversation that took place on December 5, 2016. More pointedly, Plaintiff's ICRC

Complaint did not entail any of the allegations presented in Plaintiff's New Complaint." Defendants' Memorandum, p. 10. The Defendants claim that "[t]he alleged FHA violations by Defendants occurred while Plaintiff's ICRC Complaint was pending; yet, Plaintiff did not move to incorporate said allegations into her Complaint. Accordingly, Plaintiff cannot now attempt to use the ICRC Proceeding, which pertained to a single alleged event, to argue that the statute of limitations does not bar her FHA claim set forth in her New Complaint." *Id.*, pp. 10-11. The Defendants contend that the tolling provision does not apply here because Black's claim before the ICRC alleged only one act of discrimination on December 5, 2016, the date on which Black alleges a Hunter's Run employee told her during a phone conversation that she was going to be evicted. Stated another way, the Defendants are arguing that since Black's claim filed with the ICRC did not include the same allegations she includes in her Complaint, she cannot claim that the ICRC proceeding served to toll the claims she asserts now. This is akin to a Title VII employment discrimination case, in which plaintiffs *must* file an administrative claim before the EEOC or equivalent local agency before they can bring suit in federal court. In those cases, a plaintiff cannot (usually) assert claims in a subsequent complaint if those claims were not raised in the EEOC Charge. However, the Defendants present no authority to support this argument. The only cases the Defendants cite in support of these arguments are *Burnett v. New York Central Railroad Co.*, 380 U.S. 424 (1965) and *Credit Suisse Secs LLC v. Simmonds*, 566 U.S. 221 (2012). *Id.*, p. 11. But those cases stand only for the very general proposition that "[s]tatutes of limitations are primarily designed to assure fairness to defendants. Such statutes 'promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.'" *Burnett*,

380 U.S. at 428 (citation omitted); *Credit Suisse*, 566 U.S. at 227 ("the general purpose of statutes of limitations [is] 'to protect defendants against stale or unduly delayed claims.'"). Other than that, the cases do not provide any guidance in the present case and have nothing to do with FHA claims: *Burnett* was a FELA case and *Credit Suisse* was a shareholder derivative action. The Defendants do not present any authority to support their argument that Black's present lawsuit is barred as a result of her failure to include all of her claims or allegations in her ICRC complaint.

The Court also notes that while Black's complaint before the ICRC specifically references an alleged discriminatory act on only one date–December 5, 2016–the Defendants' argument that this precludes her from bringing any claims for alleged acts on other dates is based on an overly strict and constrictive reading of that complaint, which, like this lawsuit, was brought by a *pro se* plaintiff. True, that is the only firm date mentioned in Black's charge of discrimination submitted to the ICRC. However, she also states other allegations in that charge that, when interpreted liberally, indicate that the December 5, 2016, incident was not the only time the Defendants allegedly discriminated against her. For example, Black also asserts in that charge that she made "calls to the office needing . . . maintenance requests[]" but that "Naomi Friedrichsen would yell and talked [sic] down to me as she was speaking with a child. She also informed me that I must submit all of my maintenance requests in writing. My Caucasian neighbor Tonya, [did] not to submit her requests in writing. I believe Respondent treats its Caucasian tenants more favorabl[y]." ICRC Complaint (ECF 15-9), p. 3. Therefore, the argument that Black cannot pursue claims against the Defendants that were not explicitly spelled out in her ICRC charge does not provide a valid basis for dismissing Black's claims at this juncture.

Defendant Holliday presents a similar argument, contending that she must be dismissed from this case because she was not named as a respondent in Black's claim filed with the ICRC (the claim named only Hunter's Run Apartments as a respondent). Holliday argues that "[a]ny tolling argument by Plaintiff does not apply to Defendant, Erika Holliday[,] as Plaintiff did not name Ms. Holliday as a Respondent in her ICRC Complaint." Defendants' Memorandum, p. 10 (citing *Sentell v. RPM Mgmt. Co.*, 653 F.Supp.2d 917 (E.D. Ark. 2009)). In *Sentell*, the disabled plaintiff sued an apartment complex operator alleging violations of the Fair Housing Act. The apartment complex operator filed a third party complaint against an architect, alleging that his designs violated the FHA. When the architect moved for summary judgment, the plaintiff responded by filing a motion for leave to amend her complaint to add the architect as a defendant. The district court denied the motion to amend on the basis that the architect was not named in the plaintiff's FHA administrative claim, and therefore the statute of limitations was not tolled as to the architect. Black's failure to name Holliday as a respondent in her ICRC complaint is not grounds for dismissing Holliday as a Defendant in this case, although it might mean that Black would be unable to prosecute a claim against Holliday for any act of discrimination Holliday allegedly committed *prior to* July 10, 2017, two years before Black filed this suit. At this point, the Court need not parse through the many facts, allegations and dates contained in the parties' pleadings searching for "occurrences" that might arguably state a timely claim against Holliday. But neither will the Court dismiss Holliday as a Defendant at this juncture simply because she was not named as a respondent in the ICRC proceeding. While Black arguably might not be able to assert a claim against Holliday for alleged discriminatory acts occurring before July 10, 2017, that is not grounds for dismissing her as a defendant

altogether.[6]

---

[6] Defendant Holliday's argument might also be misplaced. The district court for the Eastern District of Wisconsin addressed this same argument in another FHA case, albeit it one brought by HUD as opposed to a private, *pro se* complainant:

> [The Defendant's] motion is premised on the argument the United States' "pursuit of a claim against [Defendant] . . . is prohibited by the Fair Housing Act which states that only claims asserted in the [sic] HUD's charge can be brought in federal court." . . . The plaintiff, however, contends that the Fair Housing Act does not prohibit suits against persons who were not named in the charge issued by HUD.
> . . .
>
> [T]he United States [the Plaintiff], citing to case law interpreting Title VII, argues that an exception exists to the general rule discussed above such that "persons who were not even formally identified as respondents in the administrative proceedings may be named as defendants in the subsequent suit, provided that the defendant had 'adequate notice' of the complaint and an 'opportunity to participate in the conciliation process.'" (Pl.'s Resp. Br. at 10) (quoting *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989)). Accordingly, the court must determine whether a similar exception exists under the FHA. Again, the court does not have the benefit of any breadth of case law exploring the issue of whether the any exception exists to the general rule that the Charge of Discrimination limits the scope of civil litigation under the FHA. However, the only two cases that have discussed the issue raised by the United States, *United States v. Barberis*, 887 F.Supp. 110, 113 (D.Md. 1995), and *United States v. Woodlake Realty Company, Inc.*, No. 94-568, slip. op., at 4-9 (N.D.Ga. Apr. 18, 1995), reached the same conclusion that an exception does exist under the FHA. Upon examining those cases, the court ultimately concurs with the conclusions of those courts.
>
> The reason for the court's conclusion stems from the policy reasons as to why HUD issues a charge before a party can elect to have the claims in that charge resolved via civil litigation. The court notes analogous Title VII case law that discusses the rationale for the "adequate notice" exception. The Seventh Circuit in *Schnellbaecher* stated:
>
> > The purpose of the requirement of filing a charge before the EEOC is twofold. First, it serves to notify the charged party of the alleged violation. Second, it gives the EEOC an opportunity for conciliation, which effectuates Title VII's primary goal of securing voluntary compliance with its mandates.

Finally, there is another reason why the statute of limitations issue does not warrant dismissal of Black's Complaint at this point. It is well-established that a motion to dismiss on an affirmative defense like statute of limitations is typically inappropriate. Generally, "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). "'Where a defendant raises the statute of limitations as an affirmative defense at the motion to dismiss stage, a court can only dismiss a claim 'when [the] complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Falk and Sabr Tag, LLC v. Wheeler, et al.*, 2020 WL 759180, at *4 (E.D. Wis. Feb. 13, 2020) (quoting *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004)). "Generally, considering a statute of limitations on a motion to dismiss is inappropriate. A statute of limitations represents an affirmative defense. Because a plaintiff need not anticipate or allege facts that would defeat affirmative defenses, a court typically cannot dismiss a complaint for failure to satisfy a statute of limitations until summary judgment. *F.D.I.C. v. Kime*, 12 F.Supp.3d 1113, 1118-19 (S.D. Ind. 2014) (citing *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport*

---

887 F.2d at 126.

*United States v. Luebke,* 757 F.Supp.2d 828, 832-33 (E.D. Wis. 2010). It is important to note that in *Luebke*, the FHA action was brought by HUD on behalf of the complainant, as opposed to the present case, which Black initiated herself (and without the benefit of counsel). In the present case, the record does not reflect whether Holliday had the requisite notice or opportunity to participate in the conciliation process before the ICRC. The Court does note, however, that all of the Defendants–Friedrichsen, Holliday, Interstate Realty and Hunter's Run–were all named as Defendants in Black's counterclaim filed in the state court eviction proceeding. While it is true that Hunter's Run was the only respondent Black specifically named in her complaint filed with the ICRC, that does not automatically mean that the other Defendants cannot still be sued in this federal proceeding. But the Court need not decide this issue now, especially since the record is not developed enough to make such a determination. Like the Defendants' other arguments, this one does not warrant dismissal of Black's Complaint at the pleading stage.

*Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004)). "However, a court may properly rule on an affirmative defense where the complaint includes all the information necessary to do so. *Id*. Therefore, where 'the relevant dates are set forth unambiguously in the complaint,' a court may reach a statute of limitations argument on a motion to dismiss." *Id*. (quoting *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). In this case, the relevant facts and dates are not "set forth unambiguously" enough for the Court to conclude as a matter of law that Black's Complaint is untimely (as to either Hunter's Run or Holliday), despite the Defendants' insistence that they are. For the reasons just discussed, the Defendants' argument that the applicable statute of limitations warrants dismissal of Black's Complaint is unavailing.[7]

### III. Failure to state a claim.

The Defendants also argue in their motion that Black fails to state a viable claim because she cannot establish that she was constructively evicted from her residence. According to the Defendants, Black ultimately left the apartment "voluntarily" pursuant to the parties' Joint Agreement, so she cannot show that she was constructively evicted and thus her FHA claim under § 3604 fails as a matter of law. The Defendants explain their argument as follows:

> In *Bloch v. Frischholz*, [587 F.3d 771 (7th Cir. 2009)], the Seventh Circuit explained that 42 U.S.C. § 3604(a) . . . applies to "post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a

---

[7] The Defendants also argue that Black cannot take advantage of the continuing violation doctrine to make her claims timely. "The continuing violation doctrine states that when a plaintiff challenges 'not just one incident of conduct violative of the [FHA], but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice.'" *Nat'l Fair Hous. All. v. Deutsche Bank Nat'l Tr.*, 2019 WL 5963633, at *11 (N.D. Ill. Nov. 13, 2019) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 365 (1982)). Given that the Court concludes that Black's Complaint in this case was timely filed after the tolling period expired, Black does not need to rely on the continuing violation doctrine to make her Complaint timely and the Court need not address the argument.

> constructive eviction." . . . To show constructive eviction, a plaintiff "must show her residence is 'unfit for occupancy,' often to the point that she is 'compelled to leave.'"

Defendants' Memorandum, pp. 11-12 (quoting *Bloch*, 587 F.3d at 788). The Defendants insist that Black cannot establish that she was constructively evicted as a result of the Defendants' alleged conduct because she "entered into an agreement, one she proposed, with Hunter's Run wherein Hunter's Run agreed to make an exception to its guest policy by allowing unauthorized occupants to reside at the Property until September 15, 2017 (later extended to September 21, 2017) in exchange for Plaintiff agreeing to vacate the Property by said date. This Joint Agreement negates Plaintiff's contention that she was constructively evicted[.]" *Id*., p. 12.

The Defendants' argument, however, ignores the fact that Black can prosecute an FHA claim without having to establish that she was constructively evicted. As this Court explained in another case:

> Section 3617 provides an independent post-acquisition discrimination claim that is more broadly prohibitive of conduct than actual deprivation of the rights described in sections 3604(a) and (b). [*Bloch v. Frischholz*, 587 F.3d 771] at 781 [(7th Cir. 2009)]. For example, HUD regulation 24 C.F.R. section 100.400(c)(2) protects against discrimination by prohibiting "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race . . . of such persons, or of visitors or associates of such persons." *Id*. (emphasis added). Also germane to claims brought under section 3167 is HUD regulation 24 C.F.R. section 100.400(c)(2), which prohibits "interfering with persons in their enjoyment of a dwelling because of the race [or] handicap of such persons." *Id*. at 782 (emphasis added).

> The necessary elements of a section 3617 claim are (1) that the plaintiff is a protected individual under the FHA; (2) that the plaintiff was engaged in the exercise or enjoyment of fair housing rights; (3) that the defendants coerced, threatened, intimidated, or interfered with the plaintiff because of a protected activity under the FHA; and (4) the defendants were motivated by an intent to discriminate. *Id*. at 783 (citing *East-Miller v. Lake County Highway Dept*., 421 F.3d 558, 563 (7th Cir. 2005)). The actions by the defendant must form a pattern

of harassment, and intentional discrimination is a key element of this type of claim. *Id*. Intentional discrimination may be shown directly (through direct or circumstantial evidence) or indirectly (via the *McDonnell-Douglas* burden shifting test). *East-Miller*, 421 F.3d at 563.

*Smith v. Hous. Auth. of S. Bend*, 867 F.Supp.2d 1004, 1015-16 (N.D. Ind. 2012). The district court for the Southern District of Indiana, discussing *Bloch*, addressed § 3617 claims and explained as follows:

> The Seventh Circuit explained in *Bloch* that the protections afforded by the Fair Housing Act continue after the person takes possession of his home, condominium, or apartment. *Bloch v. Frischholz*, 587 F.3d at 782. . . . Section 3617 makes it unlawful:
>
>> to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encourage any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.
>
> 42 U.S.C. § 3617. Of relevance[,] section 3604 protects against discrimination in the sale or rental of housing. Sections 3604(a) and (b) have been interpreted as prohibiting discriminatory evictions, and "attempted discriminatory evictions can violate § 3617's prohibition against interference with § 3604 rights." *Bloch*, 587 F.3d at 782. ***In other words the lack of a constructive eviction does not foreclose the possibility that the defendants "interfered" with the plaintiffs' enjoyment of their § 3604 rights or "coerced" or "intimidated" the plaintiffs on account of their having exercised those rights.*** *Id*. The Seventh Circuit has explained that this interpretation of § 3617 is aligned with HUD regulation, 24 C.F.R. § 100.400(c)(2), which prohibits "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color . . . [or] handicap . . . of such persons." *Bloch*, 587 F.3d at 781.
>
> So the § 3617 question in this case is whether the Defendants coerced, intimidated, threatened, or interfered with the Watters's exercise or enjoyment of their right to inhabit their home because of their race or Terence Watters's handicap[.] As the Seventh Circuit has explained:
>
>> To prevail on a § 3617 claim, a plaintiff must show that (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened,

intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate. "Interference" is more than a "quarrel among neighbors" or an "isolated act of discrimination," but rather is a "pattern of harassment, invidiously motivated."

*Bloch*, 587 F.3d at 782-83 (citations omitted).

. . . But, there is a difference between a pattern of and an isolated act of harassment. *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 330 (7th Cir. 2004). In *Halprin*, the Seventh Circuit held the plaintiff's complaint was sufficient to survive a motion to dismiss because the allegations that the homeowners' association waged a campaign of harassment against the plaintiff on account of his religion presented the type of pattern that could violate § 3617.

*Watters v. Homeowners Ass'n at Pres. at Bridgewater*, 2019 WL 6213165, at *8-9 (S.D. Ind.

Nov. 21, 2019) (emphasis added). The Seventh Circuit addressed this same issue and, citing

*Bloch* (the same case the Defendants cite in support of their arguments), explained as follows:

As we recognized in *Bloch v. Frischholz*, 587 F.3d 771 (7th Cir. 2009) (en banc), the protections afforded by the Fair Housing Act do not evaporate once a person takes possession of her house, condominium, or apartment. . . .

Under 42 U.S.C. § 3604(b), it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." In addition, the Act makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604 . . . of this title." 42 U.S.C. § 3617. Among other things, these sections prohibit discriminatory harassment that unreasonably interferes with the use and enjoyment of a home–by another name, *a hostile housing environment*. *Krueger v. Cuomo*, 115 F.3d 487, 491 (7th Cir. 1997); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996); *see also Bloch*, 587 F.3d at 781 (recognizing that the protections under sections 3604(b) and 3617 may be coextensive).

A hostile-housing-environment claim requires a plaintiff to show that: (1) she endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of her residency, or in the provision of services or facilities; and (3)

that there is a basis for imputing liability to the defendant. *See DiCenso*, 96 F.3d at 1008; *see also Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017) (listing elements of a Title VII hostile-workplace claim); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993) (adopting elements of a Title VII hostile-workplace claim for the FHA).

*Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861-62 (7th Cir. 2018), *cert.*

*dismissed sub nom. Glen St. Andrew Living Com. v. Wetzel*, 139 S. Ct. 1249, 203 L. Ed. 2d 269

(2019) (emphasis added). And another district court in an FHA case recently noted:

> Plaintiffs' final federal claim is sufficient to withstand the Johnsons' motion to dismiss. The claim is based on § 3617, which states:
>
> > It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.
>
> Together, ***these sections prohibit discrimination that creates a hostile housing environment****. Wetzel v. Glen St. Andrew Living Cmty.*, LLC, 901 F.3d 856, 861 (7th Cir. 2018). To plead a hostile housing environment, plaintiffs must show "(1) [they] endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of [their] residency, or in the provision of services or facilities; and (3) that there is a basis for imputing liability to the defendant." *Id*. at 861-62.

*Small v. The Anchorage Homeowners Ass'n, LLC*, 2019 WL 1317636, at *5-6 (S.D. Ind. Mar.

21, 2019) (emphasis added).

It is undisputed that Black entered into an agreement with Hunter's Run in which she

agreed to vacate her apartment in return for Hunter's Run allowing her several weeks to do so.

The Defendants, as stated, argue that this fact establishes that Black was not constructively

evicted and so her entire FHA case crumbles. But that argument is contrary to the established law

set forth above, which explains that a plaintiff need not show that she was constructively evicted

in order to maintain a claim under the FHA. One final point: a liberal interpretation of Black's Complaint and pleadings indicates that her decision to enter the agreement to vacate might not have been as voluntary as the Defendants represent. In her Complaint, Black asserts that "[w]hen I was stating a wrongful eviction occurred it was in fact a wrongful eviction that continued after the lower court decided in my favor until I was forced out due to neglect and harassment creating an impossibility to stay in my home." Complaint, p. 1. She also alleges that she was constantly harassed by the Defendants, who accused her of repeated lease violations, but that white residents were treated more favorably. In her brief in opposition to the motion to dismiss, Black contends as follows:

> [The Defendants] state that plaintiff offered to vacate the property and left willingly. The fact that the plaintiff meticulously fought attempted evictions through the harassment and abuse, through eventually a court proceedings eviction [sic] all for over a year and then realizes in ONE MONTH that she must give up her home for the sake of her health proves that it was no way willingly [sic], but by force by the actions of the defendants.

Plaintiff's Brief in Opposition, p. 7 (capitalization in original). Whether Black left voluntarily is, therefore, a question of fact; but even if she did, that does not defeat her FHA claims.

### IV. Legitimacy of Allegations.

In their reply brief, the Defendants contend that "Plaintiff's Response evidences her intentions to use the Defendants as a scapegoat for her unfounded beliefs on what she calls the 'hidden practice of discrimination.' . . . Plaintiff asks the Court to award her $1,000,000,000 (One Hundred Million Dollars) in order to send the message that 'America will no longer passively allow the disease of racism to permeate the cultural stigma associated to all Americans internationally.' . . . Plaintiff's personal agenda must stop here. Plaintiff has used this case as a

platform to express her views on racism in America. . . . This is not the appropriate venue nor should Plaintiff's personal agenda be at the cost of Defendants. Defendants' Reply Brief (ECF 19), pp. 1-2. The Defendants point out that the ICRC issued the following finding after investigating Black's claims:

> Despite Complainant's allegations, there is no evidence to support her claims. Rather, the evidence showed Respondent notified Complainant that her lease would be terminated if she continued to violate the lease. While Complainant has alleged eviction proceedings against her were the result of race discrimination, she admits that her three (3) grandchildren who were not on the lease resided at the apartment for a two-week period. During the eviction hearing, Respondent failed to "show cause" to evict Complainant so she was allowed to remain a tenant. Furthermore, the court found no evidence of racism directed toward Complainant by Respondent, but did find evidence of racism by Complainant toward Respondent and its employees via "Facebook." No evidence was uncovered to show Respondent treated similarly-situated tenants of a different race were treated more favorable [sic]. As such and based on the aforementioned, there is no reasonable cause to believe that Respondent violated the Fair Housing Act as alleged.

Defendants' Memorandum in Support, p. 4 (quoting ICRC Notice of Finding).

The Defendants' point is valid, but it is not grounds for dismissing this lawsuit. Indeed, Black's pleadings include pages upon pages of vitriolic statements concerning what she refers to as "embedded law," which is her term for systemic racism. For example, in her response brief, Black includes the following statements:

> 1) Let's call this a special type of discrimination (not all blacks are hated) where a white person despises a highly functioning educated black person to be equal to a white person. Also refer to black wall street which portrays the exact same thought process (no black should outshine far beyond status quo). Plaintiff's Brief in Opposition, p. 2;

> 2) [T]his case requires extreme harsh punishment as the loss and suffering is great and affects millions oblivious to the masses. The hidden practice of discrimination is successfully destroying African American[s] by the millions as the average African American discriminated against can't overcome the laws, have no voice,

attitudes, denial, and general acceptance that racism cannot be proven therefore blacks must learn to live with it and die with it. *Id.*, p. 4;

3) A jury is necessary to look at the evidence and decide this case. A Jury should decide if this issue is a horrific typical example of a national disastrous act of racism that haunts our country both domestically and internationally for centuries and the value of punishment and accountability to stop it. There must be a message sent to racist people who maliciously intentionally harm people for no other reason than race. *Id.*, p. 5.

Attached to Black's brief in opposition are the pleadings she submitted to the Grant Superior Court during the state eviction proceeding. *Id.*, pp. 9-66. Those pleadings are replete with similar, and in some cases even more extreme vitriol, which need not be repeated here. But even assuming Black's opinion regarding racism in America is correct (her assertion that systemic racism exists in this country is, after all, a tough one to refute), it is not evidence in this case nor is it relevant to any issue in the case. Black's lengthy recitations about systemic racism are a political argument, not a legal one. The Defendants' frustration is palpable, but of course is not a basis for dismissing this case (nor do the Defendants argue that Black's rhetoric warrants dismissal). The only issue before this Court now is whether Black's Complaint survives the Defendants' Rule 12(b)(6) motion to dismiss. For all the reasons discussed above, the Court concludes that it does and the motion must be denied.

## CONCLUSION

For the reasons explained above, the Motion to Dismiss filed by the Defendants, Hunter's Run and Erika Holliday (ECF 14) is DENIED. The Court also directs as follows:

1) The Court extends the time to effect service on Defendant Naomi Friedrichsen to 60 days from the date of this Order and directs the U.S. Marshal to endeavor to locate and serve a summons, a copy of Black's Complaint, and a copy of this Order on Naomi Friedrichsen; and

2) Counsel for Defendants Holliday and Michaels Management-Affordable LLC f/k/a Interstate Realty Management Company are directed to file a notice or brief with the Court within 14 days from the date of this Order notifying the Court as to their position that Interstate Realty has not been served with process, and should therefore be dismissed from this case, despite the entry of an appearance by that Defendant's successor-in-interest, Michaels Management-Affordable LLC or, in the alternative, why Michaels Management-Affordable should not be substituted for Interstate Realty as a Defendant in this case or, in the alternative, whether counsel will accept service or waive service for the proper defendant (and, for that matter, whether they will accept or waive service on behalf of Defendant Naomi Friedrichsen). **Plaintiff Sandra Black shall *not* file a responsive pleading to any notice or brief submitted by Defendants.**

Date: March 11, 2020.

/s/   William C. Lee

William C. Lee, Judge

U.S. District Court

Northern District of Indiana
