**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **SANDRA BLACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:19-cv-00307-WCL-SLC** |
| | ) | |
| **NAOMI FRIEDRICHSEN**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINON AND ORDER

Before the Court is a motion to compel filed by *pro se* Plaintiff, seeking to compel

Defendants to more fully respond to her requests for admissions and requests for production and

asking that sanctions be imposed against Defendants.  (ECF 69).  On November 2, 2020,

Defendants filed a response to Plaintiff's motion (ECF 71) and a separate motion to compel,

together with a supporting memorandum, seeking to compel Plaintiff to appear for her deposition

(ECF 72, 73).  On November 9, 2020, Plaintiff filed a "reply" (ECF 75) to Defendants' motion to

compel, in which she responded to Defendants' response to her motion (ECF 71) as well as to

Defendants' motion to compel (ECF 72).  No party filed any subsequent response or reply to

either motion and their time to do so has now passed.  *See* N.D. Ind. L.R. 7-1(d)(3).

Accordingly, the Court considers both matters fully briefed and ripe for resolution.  For the

following reasons, Plaintiff's motion (ECF 69) is DENIED, and Defendants' motion (ECF 72) is

GRANTED.[1]

---

[1] While the Court previously stated that it would set a telephonic hearing on Plaintiff's motion to compel (*See* ECF 70), after reviewing the parties' filings and arguments the Court no longer believes a hearing is necessary.

### A. Background

Plaintiff initiated this matter on July 10, 2019, asserting that Defendants discriminated against her on account of her race in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq*. (ECF 1 at 2).[2]  Plaintiff "alleges in her Complaint that Defendants discriminated against her on the basis of her race, African-American, by falsely accusing her of numerous lease violations over the course of several years in an attempt to force her to vacate the apartment she rented from Defendants in Marion, Indiana." (ECF 28 at 2 (citing ECF 1)).  In particular, Plaintiff asserts that Defendants instigated an undue state-court eviction proceeding against her in Grant County Superior Court of Indiana, Small Claims Division, Case No. 27D03-1705-SC-000517,[3] on the grounds that Plaintiff allowed unauthorized guests—her grandchildren—to live in the apartment in violation of her lease. (ECF 1 at 2; ECF 15-1).  The parties eventually agreed to allow Plaintiff to remain in the apartment temporarily in exchange for Plaintiff vacating the property by September 21, 2017. (ECF 15-6, 15-7).  Accordingly, the state action was dismissed. (ECF 15-8).  Plaintiff then filed a complaint of discrimination against Defendants before the Indiana Civil Rights Commission, which subsequently found no reasonable cause to believe that Defendants violated the FHA. (ECF 15-9, 15-10).

---

[2] Plaintiff initially filed a complaint against Defendants in case number 1:19-cv-222.  District Judge William Lee dismissed that case for lack of subject-matter jurisdiction. (1:19-cv-222, ECF 3).  In a motion to reconsider, Plaintiff raised for the first time a potential FHA violation, invoking this Court's federal question jurisdiction. (1:19-cv-222, ECF 5).  Accordingly, Judge Lee directed the clerk to file Plaintiff's motion to reconsider as a new complaint in this matter. (1:19-cv-222, ECF 6).

[3] Per the Defendants' first motion to dismiss and supporting memorandum, Defendant Hunters Run Apartments and Owners ("Hunters Run") initially filed a Complaint for Possession of Real Property and Past Due Rent in the Grant County Superior Court of Indiana, Small Claims Division, under case number 27D03-1705-SC-000517. (ECF 15 at 2).  Following Plaintiff's request for a jury trial, the matter was transferred to the Grant County Superior Court's plenary docket and Hunters Run filed an amended complaint under case number 27D03-1706-PL-000014. (*Id.* at 2).  For ease of reference, the Court will refer the state court proceedings under each case number as the "Grant County case."

On June 30, 2020, this Court entered a scheduling order pursuant to Federal Rule of Civil Procedure 16, setting July 26, 2021, as the last date to complete all discovery.  (ECF 45, 46).  On August 19, 2020, Plaintiff propounded her first set of requests for production on all Defendants.  (ECF 55).  On September 14, 2020, Plaintiff similarly propounded Requests for Admissions on Defendants Hunter Run and Interstate Realty Management Company (ECF 61), Erika Holliday (ECF 62), and Naomi Friedrichsen (ECF 63).  Three days later, on September 17, 2020, Defendants responded to Plaintiff's request for production (ECF 55), raising a variety of objections to each of Plaintiff's requests (ECF 64), but producing 101 pages of responsive documents (ECF 64-1 through ECF 64-5).  On October 9, 2020, Defendants filed a notice of deposition—scheduling a deposition of Plaintiff (ECF 65)—as well as responses to each of Plaintiff's requests for admissions—again raising multiple objections to each request (ECF 66-68).

On October 19, 2020, Plaintiff filed the instant motion to compel asserting that Defendants and their counsel did not act in good faith in responding and objecting to her discovery requests.  (ECF 69).  More specifically, Plaintiff repeatedly claims that Defendants' counsel was "lying" and at numerous points accuses counsel and the individual Defendants of committing perjury.  (*See, e.g., id.* at 1, 2, 8).  Defendants, in response, attach multiple emails as evidence that they have attempted to confer in good faith with Plaintiff regarding their objections to her discovery requests.  (ECF 71-1 through ECF 71-7).  Similarly, Defendants maintain that their various objections to Plaintiff's requests were valid—namely that her requests were, at different points, vague, overly broad, compound, and generally improper.  (ECF 71).

On November 2, 2020, Defendants filed their own motion to compel (ECF 72), alleging that Plaintiff had refused to attend her scheduled deposition.  (ECF 73 at 2; ECF 73-1).  Plaintiff,

in response, contends that her deposition should be postponed because Defendants have failed to fully comply with her discovery requests.  (ECF 75 at 2).  Plaintiff similarly alleges that the deposition will be used to "taunt" her and reiterated her claims that Defendants and their counsel have acted in bad faith.  (*Id.*; ECF 75-1).

### B.  Applicable Law

Pursuant to Federal Rule of Civil Procedure 34, a party may serve another with a request to produce or permit the party to inspect a document or thing "in the responding party's possession, custody, or control."  Fed. R. Civ. P. 34(a)(1).  Such requests must be within the scope of discovery permitted by Federal Rule 26(b)—that is—it must be relevant to a party's claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b), 34(a).  The responding party may object to a request that it believes is improper pursuant to Federal Rule 34(b)(2)(C).

Similarly, per Federal Rule of Civil Procedure 36, "[a] party may serve on any other party a written request to admit . . . the truth of any matters within the scope of Rule 26(b)(1) relating to:  (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."  "[R]equests for admission must be simple, direct and concise so they may be admitted or denied with little or no explanation or qualification." *Sommerfield v. City of Chi.*, 251 F.R.D. 353, 355 (N.D. Ill. 2008).  Further, an answering party may respond to a request for admission by denying, stating in detail why it cannot truthfully admit or deny the request, or objecting to a request—so long as it does not "object solely on the ground that the request presents a genuine issue for trial."  Fed. R. Civ. P. 36(a)(4)-(5).

Under Federal Rule of Civil Procedure 37, a party is permitted to file a motion to compel discovery where another party fails to respond to requests for admission or requests for

4

production of documents.  Fed. R. Civ. P. 37(c); *see also Redmond v. Leatherwood*, No. 06-C-1242, 2009 WL 212974, at *1 (E.D. Wis. Jan. 29, 2009).  "A motion to compel discovery pursuant to Rule 37(a) is addressed to the sound discretion of the trial court."  *Redmond*, 2009 WL 212974, at *1 (citation omitted).  While a discovery request is entitled to "broad and liberal treatment," *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963), a discovery request, "like all matters of procedure, has ultimate and necessary boundaries," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  The moving party generally bears the burden of proving that the discovery it seeks is relevant to the case.  *See United States v. Lake Cty. Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (citations omitted).  Conversely, "[t]he party opposing discovery has the burden of proving that the requested discovery should be disallowed."  *Bd. of Trs. of the Univ. of Ill. v. Micron Tech., Inc.*, No. 211-cv-02288-SLD-JEH, 2016 WL 4132182, at *3 (C.D. Ill. Aug. 3, 2016) (collecting cases).

Subject to certain limited exceptions, "[a] party may, by oral questions, depose any person, including a party, without leave of court" so long as that person and the other parties have "reasonable written notice."  Fed. R. Civ. P. 30(a)(1).  "In the absence of a showing of a lack of good faith on the part of [her] adversary, a party may not refuse, upon deposition, to reveal matters specifically within the scope of the examination permitted by the [Federal Rules]."  *Smith, Kline & French Labs. v. Lannett Co.*, 2 F.R.D. 561, 562 (E.D. Pa. 1942).  Courts have found a party's willful failure to attend her deposition grounds for sanctions.  *See, e.g., Stewart v. Illinois*, No. 01 C 5520, 2003 WL 21939036, at *1 (N.D. Ill. Aug. 12, 2003).

### *C. Analysis*

*1. Plaintiff's Motion to Compel*

Having reviewed both Defendants' discovery responses (ECF 64, 66-68) and Plaintiff's motion (ECF 69), the Court agrees with Defendants that Plaintiff's motion is generally meritless and should be denied.  In her motion, Plaintiff raises specific arguments as to Defendants' responses to Items 1-7[4] of her requests for production.[5]  (ECF 69).  Plaintiff also raises more general arguments as to Defendants' responses to her requests for admissions, contending that Defendants have committed perjury and have lied in their responses.  (*Id.* at 1-3).  Finally, Plaintiff requests sanctions against Defendants and their counsel and asks that Defendants' discovery responses be "excluded."  (*Id.* at 10).  The Court will address each argument in turn.

#### i.  Request for Production, Item 1

Plaintiff first requests that Defendants produce any documents listing any white, "section 8" tenants, with certain criteria[6]—presumably similar to Plaintiff—that were issued either a "final pet warning without any prior pet warning," a request to vacate due to unauthorized guests, or were served with an eviction lawsuit.  (ECF 55 at 2-3).  Plaintiff, in the same request,

---

[4] Plaintiff labels each request for production as an "item." *(See* ECF 55).  For the sake of consistency, the Court will follow suit.

[5] Plaintiff raises additional arguments as to other "items" and responses in her reply brief.  (*See* ECF 75).  "A reply brief, though, is not the proper vehicle to raise new arguments not presented in an opening brief."  *White v. United States*, 23 F. App'x 570, 571 (7th Cir. 2001).  In any event, Plaintiff's arguments in her reply largely mirror the arguments raised in her motion.  Because such arguments are generally meritless, the Court sees no reason to address the additional points raised in Plaintiff's reply.

[6] In particular, Plaintiff seeks documentation regarding white, "Section 8" tenants who had:
    A.  **Never** missed paying rent, never paid late rent;
    B.  Had no criminal activity
    C.  Had no property damage
    D.  No immediate neighbor complaints  . . . .
    E.  Very little to no company at the home
    F.  Maintained an orderly, quiet well ran home
(ECF 64 at 2-3).

also seeks the production of any such warning, request, or civil complaint, as well as any documentation of similarly situated white, "section 8" tenants who were not treated "harshly." (*Id.*). Defendants objected on the grounds that Plaintiff's request was "vague, overly broad in time and scope, unduly burdensome, and seeking information that is not relevant and not reasonably calculated to lead to the discovery of admissible evidence," and generally unintelligible. (ECF 64 at 3-4). As such, Defendants produced no responsive documents. (*Id.*).

As an initial matter, the Court reads Plaintiff's request as seeking evidence of similarly situated white tenants who were treated differently than her. Such "comparator" evidence would certainly seem relevant to a claim under 42 U.S.C. § 3604(b) or § 3617, and within the scope of Rule 26. *See Mehta v. Vill. of Bolingbrook*, 196 F. Supp. 3d 855, 867 (N.D. Ill. 2016) ("[T]o prevail on a claim under section 3617, a plaintiff must show (1) [s]he is protected under the FHA; (2) [s]he was engaged in the enjoyment or exercise of [her] FHA rights; (3) defendants were at least partly motivated by an intent to discriminate; and (4) defendants coerced, intimidated, threatened, or interfered with the plaintiff on account of [her] FHA-protected activity."); *Krieman v. Crystal Lake Apartments Ltd. P'ship*, No. 05 C 0348, 2006 WL 1519320, at *7 (N.D. Ill. May 31, 2006) ("[To prevail on a claim under § 3604(b),] Plaintiffs must show: 1) that they are members of a protected class; 2) that they were qualified to receive the services in question; 3) that they were denied or delayed services by the Defendants; and 4) that Defendants treated a similarly situated person outside of the protected class more favorably." (quoting *Flores v. Vill. of Bensenville,* No. 00 C 4905, 2003 WL 1607795, *4 (N.D. Ill. Mar. 26, 2003))). Indeed, in order to survive a motion for summary judgment or proceed at trial, Plaintiff must show that Defendants treated similarly situated tenants differently than her. *See id.* (granting summary judgment in part because "Plaintiffs claim[ed] that the air conditioners of

7

other tenants were repaired before their own, but could not identify those persons or provide any support for their position.").

That being said, Plaintiff's request, as written, is vague and overly broad for a variety of reasons. "Courts analyzing a claim of hostile housing environment look to cases discussing hostile work environment, under Title VII of the 1968 Civil Rights Act, for guidance." 47 A.L.R. Fed. 3d Art. 3 (2019). "Under [Seventh Circuit Court of Appeals] precedents, . . . an employment discrimination plaintiff may demonstrate pretext by providing evidence that a similarly situated employee outside her protected class received more favorable treatment." *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). However, in order to use such comparator evidence, it must contain "enough common factors . . . to allow for a meaningful comparison in order to divine whether intentional discrimination was at play." *Id.* at 847 (quoting *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007)). As such, requests for discovery should be "limited to the time frame involving the alleged discriminatory conduct." *Johnson v. Jung*, No. 02 C 5221, 2007 WL 1752608, at *2 (N.D. Ill. June 14, 2007) (internal quotation marks omitted) (collecting cases).

Here, Plaintiff's request is not limited to the years she was a tenant, the years of the alleged discriminatory actions, or any similarly relevant time period. *See Breon v. Coca-Cola Bottling Co. of New England*, 232 F.R.D. 49, 55 (D. Conn. 2005) (finding interrogatories requesting information going back twenty years overly burdensome). Further, Plaintiff extended her request to other documents concerning white tenants who were not treated "harshly." This would certainly seem to encompass a wide range of conduct which would not provide a meaningful comparison to the alleged discrimination that Plaintiff felt. Accordingly, Plaintiff's

motion to compel (ECF 69) is DENIED as to Item 1.  Plaintiff is ENCOURAGED to work with Defendants to narrow this request in time and scope.

ii.  Request for Production, Item 2

In her second request, Plaintiff sought documents "that show that [she] missed paying rent or was late paying rent."  (ECF 55 at 3).  Defendants again objected on the grounds that the request was vague, overly broad, unduly burdensome, not relevant and not reasonably calculated to lead to admissible evidence, and sought information already in the possession, custody, or control of Plaintiff.  (ECF 64 at 4).  Nevertheless, Defendants produced one responsive document—a June 6, 2016, letter to Plaintiff stating that there was an outstanding balance on her account.  (ECF 64-1).  Plaintiff, in turn maintains that "[t]here should be no objection to [her] having this evidence that [D]efendants are admitting to a good payment history of the plaintiff . . . ."  (ECF 69 at 4).

As an initial matter, it is not clear what Defendants find vague or unduly burdensome about Plaintiff's request.  "The burden rests upon the objecting party to show why a particular discovery request is improper."  *McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008) (citation and internal quotation marks omitted).  Unlike Item 1, it is not clear from the text of the request what Defendants are objecting to, and courts have consistently held that mere "boilerplate" objections to discovery such as the ones employed here—without more—do not constitute grounds for noncompliance with a discovery request.  *See Fudali v. Napolitano*, 283 F.R.D. 400, 403 n.2 (N.D. Ill. 2012) (collecting cases); *see also Gingerich v. City of Elkhart Prob. Dept.*, 273 F.R.D. 532, 542-43 (N.D. Ind. 2011).  That being said, it appears that Defendants did in fact comply with Plaintiff's request—producing the June 6, 2016, letter.

9

Plaintiff's main concern seems to be that Defendants did not admit that she had a "good" payment history.  (ECF 69 at 4).  But that was not the request Plaintiff made.  Plaintiff could have posed a question about her payment history by way of an interrogatory pursuant to Federal Rule of Civil Procedure 33 or a request for admission pursuant to Rule 36.  Or, Plaintiff could have requested documents showing that she had made full and timely rent payments.  But that is not what she did.  She asked for any documentation that she missed rent payments and so that is what she received.

Lastly, while Plaintiff takes issue with Defendants objecting to her request, Federal Rule 34(b) specifically contemplates parties objecting to requests for production.  Further, objections under Rule 34 are generally considered waived unless raised in a timely manner.  *See Whitlow v. Martin*, 259 F.R.D. 349, 354 (C.D. Ill. 2009).  While the use of boilerplate objections to discovery requests may not be persuasive, they are not uncommon.  The fact that Defendants lodged these objections but otherwise attempted to comply with Plaintiff's discovery requests does not suggest that they acted in bad faith.  *See Hashim v. Ericksen*, No. 14-CV-1265, 2016 WL 6208532, at *2 (E.D. Wis. Oct. 22, 2016) ("Plaintiff disagrees with defendants' denial of this admissions requests.  However, defendants responded to the request and plaintiff's disagreement with it is not the proper subject of a motion to compel."  (internal citation omitted)).  Accordingly, because Defendants appear to have complied with Plaintiff's request, her motion to compel is DENIED as to Item 2.

### iii.  Request for Production, Item 3

In her next request, Plaintiff asked for "documents showing that [she] had criminal activity during her tenancy."  (ECF 55 at 3).  In addition to the boilerplate objections raised in their other responses, Defendants specifically objected that the phrase "criminal activity" is

vague, ambiguous, and undefined.  (ECF 64 at 4).  Nevertheless, Defendants again responded to the request, reporting that they had no responsive documents.  (*Id.*).

Again, Plaintiff's gripe does not appear to be with the fact that Defendants do not have any responsive documents.  Indeed, her request in Item 1 and her filings throughout this case seem to suggest that she has no criminal history.  Rather, Plaintiff seems to take issue with the fact that Defendants objected at all.  (*See* ECF 69 at 5 ("Thus [Defendants] must state none without objection.")).  As already mentioned, though, parties are allowed to raise objections to requests for production.  Further, the Court agrees that the phrase "criminal activity" is vague.  It is not clear whether Plaintiff is requesting documents showing she was convicted of a crime during her tenancy, or complaints from neighbors that Plaintiff or a member of her household engaged in criminal activity, or for any record that a criminal act perpetrated by a third party occurred in her household.  In any event, though, a motion to compel is again inapplicable because Defendants did in fact comply with the request—denying that any such document exists.  (ECF 64 at 4).  Accordingly, Plaintiff's motion (ECF 69) is DENIED as to Item 3.

iv.  Request for Production, Item 4

In her next request, Plaintiff sought "documents showing that [she] caused damage to her property at the apartment due to neglect or wrong use of the apartment."  (ECF 55 at 4). Defendants again raised conclusory boilerplate objections, but specifically objected that the "term[s] 'neglect', 'wrong use' and 'violations' are vague, ambiguous, and undefined."  (ECF 64 at 4).  Nevertheless, Defendants produced five letters and two "friendly reminder" forms detailing various alleged lease violations.  (ECF 64-2).  Again, Plaintiff asserts that Defendants should have responded without raising any objections.  (ECF 69 at 6 ("If [D]efendants believe that blinds are the property damage requested and that they were used 'wrongful' or broken by

11

'neglect' . . . . they should state: **refer to the blinds violation . . . <u>without objection</u>**.  (emphasis in original))).

For the reasons already discussed *supra*, Plaintiff's motion to compel as to this request is meritless.  Defendants are able to object to requests that they, in good faith, find ambiguous or overly broad.  Further, Defendants did in fact respond to Plaintiff's request.  Accordingly, Plaintiff's motion to compel as to Item 4 is DENIED.

<u>v.  Request for Production, Item 5</u>

Plaintiff next requested evidence that her "immediate neighbors complained about her." (ECF 55 at 4).  Defendants objected on the grounds that the request was vague, overly broad, unduly burdensome, irrelevant—specifically asserting that "the term 'complained' is vague, ambiguous, and undefined."  (ECF 64 at 4).  Still, in response to the request, Defendants referred to their response to Item 4—which included a December 5, 2016, letter stating that Plaintiff's surrounding neighbors had complained about her failing to cleaning up after her dog.  (ECF 64-2 at 7).  A handwritten note signed by Defendant Erika Holliday on the letter, however, states to "please disregard" and that the letter was later "removed from file."  *Id.*

Plaintiff's motion as to this request is somewhat contradictory.  She asks that Defendants be compelled to "submit all complaints made by neighbors" but states that they cannot refer to a violation that they affirmatively "disregarded and removed from the file."  (ECF 69 at 8 (emphasis omitted)).  Again, Plaintiff seems to take issue with the form of Defendants' response but not its substance.  Plaintiff asked for documentation in Defendants' custody or control showing that neighbors had complained about her.  Accordingly, Defendants produced a letter they had sent purporting to be a response to complaints they had received about Plaintiff's dog. Though Defendant Erika Holliday admitted in response to a request for admission that it was

inadvertently issued (ECF 68 at 5), the letter still seems responsive to Plaintiff's request.

Accordingly, Plaintiff's motion as to Item 5 is also DENIED.

### vi.  Request for Production, Item 6

Plaintiff next asked Defendants to produce "documents showing that [her] grandchildren caused trouble during their stay at Hunters Run."  (ECF 55 at 4).  Defendants once again raised boilerplate objections while specifically objecting to the phrase "trouble," but otherwise responded that they have no responsive documents.  (ECF 64 at 5).  Again, Plaintiff's issue appears to be that Defendants raised objections to this request.  (ECF 69 at 6 ("Either there is documentation that the children were in trouble as tenants or there is no documentation.  No objections.")).  But Defendants complied with the request—stating that they had no responsive documents—and thus, Plaintiff's motion as to Item 6 is DENIED.

### vii.  Request for Production, Item 7

Plaintiff next takes issue with Defendants' response to Item 7 of her requests for production.  (ECF 69 at 2).  In Item 7, Plaintiff requests that Defendants "[p]roduce documents showing that [she] had ever been SERVED with any lease violation."  (ECF 55 at 4).  Plaintiff explains that "[j]ust a written account is not a service.  Anyone can write and make up 1000 violations."  (*Id.*).  Rather, Plaintiff requests "ALL service violations . . . [such as a] court eviction and all other such serviced violations or a US mailed violation."  (*Id.*).  Defendants objected to this request on the grounds that the request is vague—specifically the terms "served" and "service violation"—overly broad in time and scope, unduly burdensome, and seeking evidence that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.  (ECF 64 at 5).  Nevertheless, Defendants referred to the documents produced in

response to Item 4 (ECF 64-2 at 1-9), as well as Plaintiff's previous filings in the Grant County case (ECF 64 at 5).

Plaintiff's request is vague.  It is not clear what Plaintiff means by "service" or a "serviced violation."  At least in legal parlance, "to serve" means "to make legal delivery of (a notice of process)," or "to present (a person) with a notice of process required by law."  *Serve*, Black's Law Dictionary (11th ed. 2019).  A "service" then, is "[t]he formal delivery of a writ, summons, or other legal process, pleading, or notice to a litigant or other party interested in litigation; the legal communication of a judicial process."  *Service*, Black's Law Dictionary (11th ed. 2019).  Presumably, Plaintiff is requesting that Defendants produce a judicial determination that she did or did not violate her lease.

There is nothing to suggest, though, that there has been any other lawsuit involving Plaintiff or Defendants concerning her lease besides the Grant County case which was dismissed before trial.  (ECF 15-8).  Plaintiff seems to actually be requesting that Defendants admit that such a document does not exist—that is to say, that there has been no judicial determination she has violated her lease.  (*See* ECF 69 at 2 ("[Defendants' counsel] needs to state that no service of any violation ever took place . . . .")).  Such a reading, however, is far from clear from the text of the request and is not within the scope of Rule 34—which again is limited to documents and things in Defendants' custody or control.

Plaintiff also seems to doubt the authenticity of the documents produced—specifically, the two "friendly reminder" documents.  (ECF 69 at 7 ("I argued that the friendly reminders were never issued to me and I have disputed [this] from the first time I ever saw them in [the lower court.")).  That being said, it is not clear what that issue—whether or not Plaintiff saw those two documents before now—has to do with discovery.  As discussed in greater detail

below, Plaintiff is free to attack the admissibility of the documents and how much weight they should be afforded in future proceedings.  That, though, is a dispute for another time. Accordingly, Plaintiff's motion as to Item 9 is DENIED.

    viii.  Plaintiff's Arguments as to the Request for Admissions

    Through much of her motion, Plaintiff also accuses Defendants Naomi Friedrichsen and Erika Holliday, as well as their attorney Brittney Rykovich, of committing perjury and lying to the Court.  (ECF 69 at 7-8).  For example, in her first request for admissions as to Defendant Friedrichsen, Plaintiff requested that Friedrichsen admit that she "perjured [her]self (LIED under oath) at some point any point during [her] testimony in lower court."  (ECF 63 at 1).  Defendants objected to the request as unintelligible and to the extent that it called for a legal conclusion, but otherwise denied the allegation.  (ECF 66 at 3).  Plaintiff also requested that Defendant Friedrichsen admit she had accused Plaintiff of having multiple unauthorized occupants in her apartment, to which Defendants responded that the April 19, 2017, letter and 30-day notice to vacate "speaks for itself."  (ECF 66 at 3; ECF 64-2 at 8).  Plaintiff similarly requested that Defendant Friedrichsen admit that she "never witnessed unauthorized occupants living in [Plaintiff's] home prior to April 19, 2017."  (ECF 66 at 3).  Plaintiff now asserts that Defendant Friedrichsen—in addition to perjuring herself in the Grant County case—perjured herself in denying and objecting to these requests for admission.  (ECF 69 at 8).

    Plaintiff does not attach any transcript from the "lower court"—which the Court assumes to be the Grant County Superior Court—but believes that Plaintiff is reiterating the arguments she first raised in support of her partial motion for summary judgment.  (ECF 36).  In particular, Plaintiff filed an "Affidavit Testimonies from Lower Court" in which she included a portion of the transcript of Defendant Friedrichsen's testimony from the Grant County case.  (ECF 37).

At least as to the first two requests for admission posed to Defendant Friedrichsen, the basis of Plaintiff's accusation of perjury seems to be as follows:  In the Grant County case, the trial court held a preliminary possession hearing on June 8, 2017, pursuant to Indiana Code § 32-30-3-5.  (ECF 15 at 2; *see also* ECF 15-4).  At the hearing, Defendant Friedrichsen testified on direct examination that "it was reported to [her] by [her] assistant and [she] also witness[ed] it as well that there has [sic] been additional people and potential occupants in [Plaintiff's] apartment."  (ECF 37 at 8).  Defendant Friedrichsen also testified that the April 19, 2017, letter and 30-day notice (ECF 64-2 at 8) "was a result of various lease violations plus [Plaintiff] had what we thought was an unauthorized occupant" (ECF 37 at 15).  On cross examination, though, Defendant Friedrichsen testified that she personally had "only noticed one [unauthorized occupant]."  (*Id.* at 38).  Plaintiff then sought to compare Defendant Friedrichsen's statement on cross examination (ECF 37 at 39), with the April 19, 2017, letter where Defendant Friedrichsen wrote "we have reason to believe that you have unauthorized occupants in your apartment" (ECF 64-2 at 8; *see also* ECF 37 at 3).

For a variety of reasons, the Court concludes that Defendant Friedrichsen's responses to these requests for admission do not warrant sanctions and that her objections were justified.  Fed. R. Civ. P. 36(a)(6).  First and foremost, Defendants did in fact respond to the request for admission—denying the request.  Further, Defendants' objection—that the request called for a legal conclusion—is proper.  Perjury is a crime.  Whether someone did or did not commit a crime is a legal conclusion.  *See Wimpye v. AK Steel*, No. 1:11-CV-844, 2013 WL 3148234, at *2 n.3 (S.D. Ohio June 19, 2013), *R&R adopted*, No. C-1-11-844, 2013 WL 3975760 (S.D. Ohio Aug. 1, 2013) ("[P]laintiff's conclusory allegation that AK Steel is guilty of discriminatory

practices is a legal conclusion. . . . ").  "Requests to admit may not be used to establish legal conclusions."  *Sommerfield*, 251 F.R.D. at 355.

Further, "[a] defendant commits perjury if, while testifying under oath, [s]he gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Riney*, 742 F.3d 785, 790 (7th Cir. 2014) (citation and internal quotation marks omitted).  There is nothing in the record to suggest that Defendant Friedrichsen's statements in the April 19, 2017, letter were made under oath, and she testified in the Grant County case that the suggestion she had personally observed multiple occupants—as opposed to the one she supposedly had firsthand knowledge of—was made by mistake.  (ECF 37 at 39).  Similarly, whether or not Defendant Friedrichsen had firsthand knowledge of multiple unauthorized occupants does not appear to have been particularly material to the proceeding in the Grand County case, or the proceedings currently before this Court.

While Plaintiff raises similar arguments regarding the state-court testimony of Defendant Holliday, she fails to attach any supporting transcripts.[7]  In any event, though, Plaintiff's attacks on Defendants' credibility are not within the purview of a motion to compel.  At trial, Plaintiff will be able—within in the bounds of the Federal Rules of Evidence—to question Defendants about prior inconsistent statements.  *See* Fed. R. Evid. 613.  For each of the requests for admissions, though, Defendants answered, denied, or objected.  (*See* ECF 66 through ECF 68).  As explained above, each of these responses are acceptable.  Plaintiff may disagree with Defendants' answers and may disagree with Defendants' version of the events, but neither of

---

[7] Plaintiff does provide an "affidavit" summarizing what the supposed testimony was.  (ECF 37).  The Court, however, declines to impose sanctions based solely on Plaintiff's recollection of what the state court testimony was.

these issues are grounds for a motion to compel. *See Braithwaite v. Bille*, No. 17-CV-706-PP, 2020 WL 4934586, at *7 (E.D. Wis. Aug. 24, 2020) ("The fact that the defendants disagree with the plaintiff, or that they do not remember the incident the way the plaintiff does, does not mean that they are lying under oath.  It is not the court's job, or even the plaintiff's, to decide whose version of events is the most credible.  That is the jury's job."); *see also Hashim*, 2016 WL 6208532, at *2.

       ix.  Plaintiff's Request for Sanctions

As mentioned, Plaintiff also requests that sanctions be imposed on Defendants and their counsel.  (ECF 69 at 10).  In general, Rule 37(b)(2)(A) permits the Court to imposes sanctions on a party which "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a) . . . ."  While not always necessary, a successful motion to compel "usually precedes the imposition of Rule 37(b) sanctions . . . ."  *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984).  Because Plaintiff's motion to compel (ECF 69) is denied, and because Defendants have not otherwise failed to comply with an order to permit discovery, sanctions pursuant to Rule 37(b) are inappropriate.

It is possible that Plaintiff is requesting sanctions be imposed pursuant to Rule 37(c) for Defendants' alleged lack of truthfulness in responding to Plaintiff's requests for admission.  Such sanctions, however, are premature.  If at trial Plaintiff is able to establish the truth of a request for admission that was denied, Plaintiff could again move for sanctions under Federal Rule 37(c)(2).  *See APC Filtration, Inc. v. Becker*, No. 07 C 1462, 2007 WL 3046233, at *2 (N.D. Ill. Oct. 12, 2007) ("Federal Rule of Civil Procedure 37(c)(2) provides for sanctions '[i]f a party fails to admit ... the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves . . . the truth of the matter.'  Therefore, the proper time for APC

to move for sanctions based on Becker and SourceOne's responses to APC's requests to admit will come only after the finder of fact determines the truth of the matter.  Because this has not occurred (and is not certain to occur) the Court does not impose sanctions on this basis.").  At least at this point, though, Plaintiff's request for sanctions is DENIED.

      x.  Plaintiff's Request to "Exclude" Evidence

Plaintiff also requests that the Court exclude Defendants' discovery responses due to Defendants' various objections.  (ECF 69 at 8).  Plaintiff, however, does not cite any authority in support of her request.  To the extent that Plaintiff is requesting that Defendants be prohibited "from introducing designated matters in evidence" as a sanction pursuant to Federal Rule 37(b)(2)(A)(ii), for the reasons already discussed, such sanctions are not warranted on this record.

To the extent that Plaintiff believes that Defendants' discovery responses are not admissible evidence, her request to exclude is premature.  Discovery is a collaborative process between the parties, "designed to facilitate both the preparation for and the trial of cases." *United States v. Am. Locomotive Co.*, 6 F.R.D. 35, 37 (N.D. Ind. 1946).  "[R]elevancy in the discovery context is broader than in the context of admissibility." *Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 224 (N.D. Ill. 1997).  "Information within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  Because Plaintiff is a *pro se* party, the parties are required to file their discovery requests and responses pursuant to Northern District of Indiana Local Rule 26-2(a)(2), but this does not mean that the Court has considered the eventual admissibility of any of the discovery materials filed.

This Court's Local Rules only contemplate parties filing discovery materials pertaining to discovery disputes pursuant to Federal Rules of Civil Procedure 26(c) or 37 and materials "that

the party relies on to support a motion that could result in a final order on an issue."  N.D. Ind.

L.R. 26-2(b)-(c).  Here, the Court has only considered Defendants' discovery responses to the

extent that they bear on Plaintiff's motion to compel.  (ECF 69).  It has not, however, considered

the admissibility or weight to be afforded to any discovery response.  If Defendants were to file

discovery materials in support of a motion for summary judgment which Plaintiff believes are

not admissible, she is free to object to such evidence then.  Fed. R. Civ. P. 56(c)(2); *see also*

*Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir. 2018) ("In the briefing on a motion for

summary judgment, either side may object that the other's evidence cannot be presented in a

form that would be admissible in evidence." (citation and internal quotation marks omitted)).

Similarly, Plaintiff is free to object to the admissibility of evidence before trial by way of a

motion *in limin*e or at trial.  *See Dartey v. Ford Motor Co.*, 104 F. Supp. 2d 1017, 1020 (N.D.

Ind. 2000).  However, at this time, the Court sees no need to exclude Defendants' discovery

responses or otherwise strike them from the record.

*2.  Defendants' Motion to Compel*

       i.  Defendants' Arguments Regarding Plaintiff's Deposition

     As mentioned, Defendants have also filed a motion seeking to compel Plaintiff's

attendance at her own deposition.  (ECF 72).  Plaintiff, in response, contends that her deposition

should be postponed until after Defendants have fully complied with her discovery requests.

(ECF 75 at 2; *see also* ECF 73-2, ECF 73-3).  Plaintiff's argument, however, has no support in

the Federal Rules of Civil Procedure or the relevant caselaw.

     Pursuant to Federal Rule 30(a)(1), Defendants may "depose any person, including a

party, without leave of court . . . ."  That being said, the "party who wants to depose a person by

oral questions must give reasonable written notice to every other party," with such notice

including the "time and place of the deposition, and if known, the deponent's name and address." Fed. R. Civ. P. 30(b)(1).  Finally, the notice must state "the method for recording the testimony." Fed. R. Civ. P. 30(b)(3)(A).  In general, "a failure [of a party to attend its own deposition] is not excused on the ground that the discovery sought was objectionable . . . ."  Fed. R. Civ. P. 37(d)(2).

Here, Defendants filed a notice of deposition in compliance with Rule 30 on October 9, 2020.  (ECF 65).  Plaintiff, however, failed to respond to the notice.  Instead, Plaintiff emailed Defendants' counsel explaining that she would not attend her deposition until Defendants cooperated with her discovery requests.  (*See* ECF 73-2, 73-3).  Plaintiff, however, cannot delay responding to Defendants' discovery requests merely because she believes that Defendants have not been forthright in responding to hers.  *Williams v. Biomet, Inc.*, No. 3:12-MD-2391RLM-MGG, 2019 WL 6117594, at *3 (N.D. Ind. Nov. 15, 2019) ("The prematurity argument seems to be based on the proposition that Biomet must complete its own discovery before it can respond to Ms. Williams's discovery requests.  Biomet's position has no basis in the law."); *see also Hendrickson v. Wal-Mart Stores Inc.*, No. 17-C-1680, 2019 WL 1877227, at *1 (E.D. Wis. Apr. 26, 2019) ("By failing to attend his deposition, Hendrickson has thwarted Wal-Mart's efforts to conduct discovery and defend against his claims.  Hendrickson has provided no reason for the court to believe that his failure to appear for his deposition was substantially justified.  His conduct is nothing short of a willful disregard of his discovery obligations.").

In summary, Plaintiff has not shown that she is entitled to postpone or otherwise delay her deposition.  As already discussed, the Court does not find that Defendants' objections to Plaintiff's various discovery requests constitute "bad faith."  *See Lannett Co.*, 2 F.R.D. at 562. Further, discovery disputes—on their own—do not justify a party's failure to attend her own

deposition.  Accordingly, Defendants' motion to compel (ECF 72) is GRANTED.  Plaintiff is ORDERED to work with Defendants to schedule a deposition within 21 days of this Order.

   ii.  Defendants' Request for Fees

Defendants also request that Plaintiff be ordered to pay the "costs and fees incurred . . . as a result of Plaintiff's bad faith in cancelling her previously noticed deposition."  (ECF 73 at 3).  Rule 37 contemplates sanctions both for failing to attend a deposition and for opposing a motion to compel.  Indeed, Rule 37 presumptively requires the loser "to make good the victor's costs." *Rackemann v. LISNR, Inc*., No. 1:17-cv-00624-MJD-TWP, 2018 WL 3328140, at *2 (S.D. Ind. July 6, 2018) (citation and internal quotation marks omitted).  Pursuant to Rule 37(d), the Court may order a party who "fails, after being served with proper notice, to appear at [her] deposition" to pay "the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was not substantially justified or other circumstances make an award of expenses unjust."

Rule 37(a) also provides that "the [C]ourt must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion [to compel] . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  The Court, however, will not order the payment of fees if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii); *see also Steadfast Ins. Co. v. Auto Mktg. Network, Inc*., No. 97 C 5696, 1999 WL 446691, at *1 (N.D. Ill. June 23, 1999).  "The burden of persuasion is on the losing party to avoid assessment of expenses and fees, rather than on the winning party [to] obtain such an

award." *Lincoln Diagnostics, Inc. v. Panatrex, Inc*., No. 07-CV-2077, 2008 WL 4330182, at *3

(C.D. Ill. Sept. 16, 2008) (citation and internal quotation marks omitted).

Here, Defendants have filed a certification that they attempted to confer with Plaintiff to

resolve this matter without the Court's intervention.  (ECF 72-1).  Further, as stated *supra*,

Plaintiff's assertion that she could delay her deposition is not supported by the Federal Rules or

caselaw.  As a result, Plaintiff's failure to attend her deposition and her response to Defendants'

motion to compel were not "substantially justified."  *See Perkins v. Wis. Laborers Health Fund*,

No. 11-CV-846-JPS, 2011 WL 6400465, at *1 (E.D. Wis. Dec. 20, 2011) ("An award of fees to a

successful defendant may be denied if the plaintiff's position was both 'substantially justified'—

meaning something more than non-frivolous—and taken in good faith, or if special

circumstances make an award unjust." (citing *Harris Tr. & Sav. Bank v. Provident Life &

Accident Ins. Co.*, 57 F.3d 608, 616 n.4 (7th Cir.1995)); *see also Paige v. Consumer Programs,

Inc.*, 248 F.R.D. 272, 277 (C.D. Cal. 2008) ("As an initial matter, this Court finds plaintiff's

failure to appear at the properly noticed deposition on December 21st was not 'substantially

justified.'").

Finally, Plaintiff did not address Defendants' request for attorney's fees in her response

or its accompanying affidavits.  Rather, she largely reiterated the arguments made in her previous

filings and details her personal experiences and history.  (*See* ECF 75 through ECF 77).  As such,

Plaintiff—even considering her *pro se* status—has not met her burden of showing that there are

special circumstances that would make an award of fees unjust.  *See Collins v. Illinois*, 514 F.

Supp. 2d 1106, 1111 (C.D. Ill. 2007), *aff'd*, 554 F.3d 693 (7th Cir. 2009) (finding the *pro se*

plaintiff's failure to participate in her deposition "was willful and egregious" and grounds for

sanctions despite recognizing "that the Plaintiff may not have the familiarity with the Federal

Rules of Civil Procedure, and specifically the rules pertaining to discovery, as a licensed attorney"). Therefore, on this record, an award of fees incurred by Defendants as a result of Plaintiff's failure to attend her deposition and in preparing their motion to compel appears to be appropriate.

"Nevertheless, the Court still must be satisfied that the amount requested in obtaining the order on the motion to compel is reasonable." *Priest v. Brummer*, No. 1:06-CV-65, 2007 WL 2904086, at *2 (N.D. Ind. Oct. 3, 2007). Here, though, Defendants have not set forth the amount of fees they seek to recover, or the means used to calculate that amount. *See id.* ("The Plaintiff, however, does not tell us anything about the copying costs she seeks to have assessed, such as when or why they were incurred, the number of pages copied or the per page charge, and thus we have no way of determining whether the copying expenses are reasonable." (citation omitted)). Accordingly, Defendants are directed to file an affidavit detailing the amount of fees they seek to recover and how they arrived at that amount. Because Plaintiff did not directly address the appropriateness of Defendants' fee request in her filings, she will be permitted to file a response to Defendants' affidavit to explain what—if any—special circumstances make an award of fees unjust.

### C. Conclusion

In summary, Plaintiff's motion to compel (ECF 69) is DENIED. The parties are ENCOURAGED, however, to work together—especially as it relates to Plaintiff's Item 1—to narrow their requests and objections. Defendants' motion to compel (ECF 72), on the other hand, is GRANTED. Defendants provided proper notice of Plaintiff's deposition in accordance with Federal Rule 30. Further, while parties may object to discovery requests consistent with the Federal Rules of Civil Procedure, Plaintiff has not identified any legal basis for her refusal to

attend her deposition.  Accordingly, Plaintiff is ORDERED to work with Defendants to schedule a deposition within 21 days of this Order.  Additionally, Defendants' request for fees (ECF 72) is provisionally GRANTED.  Defendants are DIRECTED to file an affidavit detailing their fee calculation within 14 days of this Order.  Plaintiff is permitted to file a response within 14 days of receiving Plaintiff's affidavit.

       SO ORDERED.

       Entered this 19th day of January 2021.

                       /s/ Susan Collins_____
                       Susan Collins
                       United States Magistrate Judge