UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SANDRA BLACK,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>NAOMI FRIEDRICHSEN, ERIKA HOLIDAY (LIDDICK), HUNTERS RUN APARTMENTS AND OWNERS, and INTERSTATE REALTY MANAGEMENT CO.,<br><br>　　　　　Defendants. | CAUSE NO.: 1:19-CV-307-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion for Summary Judgment [ECF No. 215] and a motion filed by the Plaintiff seeking various forms of relief [ECF No. 230]. For the reasons below, the Court denies the Plaintiff's motion and grants summary judgment for the Defendants.

**PROCEDURAL BACKGROUND**

The Plaintiff initially filed a complaint under cause number 1:19-cv-222, alleging a Fourteenth Amendment due process claim against these Defendants based on her alleged wrongful eviction from her apartment. *See Black v. Friedrichsen*, No. 1:19-cv-222 (N.D. Ind. 2019) (ECF No. 1). Presiding Judge William C. Lee dismissed the case for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. *See id.* (ECF No. 3). The Plaintiff filed a motion to reconsider, which Judge Lee determined raised a new constructive discharge claim under the Fair Housing Act, 42 U.S.C. § 3604. *Id.* (ECF Nos. 5, 6). As a result, Judge Lee directed the Clerk of Court to docket the Plaintiff's motion to reconsider as a complaint in a new case, which resulted in the opening of this cause number 1:19-cv-307 on July 10, 2019. *See id.* (ECF No. 6).

The Plaintiff alleges race discrimination by the Defendants in violation of the Fair Housing Act, 42 U.S.C. § 3601 et seq. *See* Compl. 2, ECF No. 1. More specifically, she alleges that the Defendants targeted her based on her race and falsely accused her of lease violations to force her to vacate the apartment. *Id.* at 2–3. A few months later, the Defendants filed a motion to dismiss, which Judge Lee denied. *See* ECF Nos. 14, 28. Before discovery began, the Plaintiff filed a Motion for Summary Judgment [ECF No. 40], which was fully briefed [ECF Nos. 44, 47]. Judge Lee denied the motion on July 27, 2020. ECF No. 48.

On October 20, 2021, this case was randomly reassigned to the undersigned as the presiding judge. ECF No. 158. Discovery closed on April 19, 2022. *See* ECF No. 192. Granting the Plaintiff's request for an extension of time, the Court set a summary judgment deadline of October 28, 2022, a response deadline of November 28, 2022, and a reply deadline of December 15, 2022. ECF Nos. 206, 213.

On October 28, 2022, the Defendants filed the instant Motion for Summary Judgment [ECF No. 215], a memorandum in support, and supporting evidence. The Plaintiff did not file a response by the November 28, 2022 deadline. Instead, on November 1, 2022, the Plaintiff filed (1) a Motion for Preventative Injunction [ECF No. 217], (2) a Motion to Strike Defendants' Motion for Summary Judgment [ECF No. 218], (3) a Motion to Admonish and Sanction Defendants [ECF No. 219], and (4) a "Motion for Seventh Circuit Court Chief Judge Diane S. Sykes to Rule Against Racism and the Conspiracy to Enable Racism in This Case Granting Plaintiff a Right to a Fair Litigation and to [Be] Heard Fully" [ECF No. 220]. On December 16, 2022, the Defendants filed a Request for Ruling on Their Motion for Summary Judgment, or Alternatively, Request for Court to Interpret Plaintiff's Motion to Strike [ECF No. 223], to which the Plaintiff filed a response [ECF No. 224]. On January 17, 2023, the Plaintiff filed a Motion to

Request a Court Appointed Attorney for Advisory/Assistance in this Matter [ECF No. 225]. On February 13, 2023, the Plaintiff filed a Motion for an Immediate Order Establishing a Fact of the Case [ECF No. 226].

On May 24, 2023, the Court issued an omnibus Opinion and Order [ECF No. 227] resolving the pending motions but taking under advisement the Motion for Summary Judgment. The Court extended the Plaintiff's deadline to respond to the Motion for Summary Judgment to June 30, 2023. *See id.* The Court explained that, if the Plaintiff did not file a response by the deadline, the Court would construe her Motion to Strike as her summary judgment response brief. *Id.* The Court also directed the Clerk of Court to send the Plaintiff a copy of Appendix C to the Local Rules for the Northern District of Indiana ("Notice to *Pro Se* Litigant").

On June 5, 2023, the Plaintiff filed a "Part 1 of Corrupt Jim Crow Court: Motion to Amend the Claim Subject Matter to Add 'Violation of Constitutional Rights of the 14th Amendment' and to Restore the Original Complaint as Only a Corrupt Court Would Order a Motion to Be a Claim" [ECF No. 228], asking the Court to reinstate the Fourteenth Amendment due process claim dismissed for lack of subject matter jurisdiction in cause number 1:19-CV-222. On June 8, 2023, the Court denied the motion and reaffirmed the June 30, 2023 summary judgment response deadline. ECF No. 229.

On July 5, 2023, the Plaintiff filed (1) a "Part 2 Jim Crow Court: Motion for Judge Springmann to Disqualify or Remove Discriminatory, Bias and Fraudulent Acts, See Citing IV" [ECF Nos. 230, 231, 233] and (2) a "Notice to Defendants and Jim Crow Court: Cease and Desist Misconduct, Bad-Faith Practice, Crimes of Fraud, Deprivation of Rights Under the Color of Law, Conspiracy to Deprive Rights, and Aiding, Abetting a Corrupt Criminal Court in Committing its Crimes, and Crimes of Bias!" [ECF No. 232].

Because the Plaintiff did not file a response by the June 30, 2023 deadline, the Court hereby CONSTRUES the Plaintiff's Motion to Strike [ECF No. 218] as her response to the Defendants' Motion for Summary Judgment. On July 14, 2023, the Defendants timely filed a summary judgment reply brief [ECF No. 234]. On July 17, 2023, the Plaintiff filed a "Reply to Defendants' Bad-Faith Motion for Summary Judgment Supporting Jim Crow Treatment of a Black Litigant" [ECF No. 235]. Because this Reply was filed without leave of Court and past the response deadline, the Court does not consider it in ruling on the motion for summary judgment.

## THE PLAINTIFF'S PENDING FILINGS

In her pending Motion [ECF Nos. 230, 231, 233], the Plaintiff raises ongoing concerns with this litigation based largely on her conviction that the Court is racist and biased against her. First, the Plaintiff asks for disqualification of the undersigned judge for judicial misconduct, for failing to report judicial misconduct, and for discriminating against her. The Plaintiff previously made similar arguments. *See, e.g.*, ECF Nos. 178 (denying motion to recuse), 179 (denying motion to recuse), 192 (denying motions to disqualify and motion to stay), 205 (denying motion to recuse and motion to stay). The Court finds no reason to resolve these issues differently and denies the request for disqualification or recusal for the reasons previously stated. *See, e.g.*, ECF No. 205, p. 6.[1]

The Plaintiff contends that she is not allowed access to the docket and thus cannot quote filings or dates of filings, attaching two screenshots of unsuccessful attempts to access the docket using her Pacer login. However, using its own login, the Court accessed the docket through the same Pacer screen by entering either the cause number with no judicial initials in the "number"

---

[1] The Plaintiff also complains of the alleged biases of all the judges who have been involved in this case. The Plaintiff has already filed at least two judicial complaints with the Seventh Circuit Court of Appeals based on these allegations of racism and bias. *See* ECF Nos. 204, 220, 222.

4

field (1:19-cv-307 rather than 1:19-cv-307-TLS) or the case name "Black v. Friedrichsen" in the "title" field (using "v." rather than "vs.").

The Plaintiff challenges the Defendants' discovery production and Magistrate Judge Collins' 25-page, January 19, 2021 ruling on the parties' motions to compel. *See* ECF No. 80. However, the Plaintiff filed an objection to that ruling on February 8, 2021, *see* ECF No. 84, and then-presiding Judge Lee overruled the objection on February 15, 2021, *see* ECF No. 86. The Plaintiff's objection to the provisional award of fees against her was resolved by Judge Collins in an order reconsidering the award and ultimately denying the Defendants' request for fees. *See* ECF No. 210. Any objections to these and other discovery rulings are now untimely. *See* Fed. R. Civ. P. 72(a) (allowing 14 days after being served with the order to file an objection).

The Plaintiff again asks the Court to appoint an attorney, for financial assistance, and for an extension of time for discovery. The Court denies the request for counsel for the reasons set forth in the Court's May 24, 2023 ruling. *See* ECF No. 227. The Court denies the request to subpoena the NAACP and the ACLU to participate in this case. The request for an extension of time is denied because the Plaintiff has made no showing of good cause or excusable neglect to alter the June 30, 2023 response deadline.

For these reasons, the Court denies the relief requested in the Plaintiff's Motion [DE 230]. The Court has carefully read the Plaintiff's Notice [ECF No. 232] but takes no action because the Notice does not ask for any form of relief. The Court again recognizes that all the Plaintiff's filings express her opinions and frustrations regarding systemic racism in America. However, as Judge Lee stated in the opinion denying the Defendants' motion to dismiss: "But even assuming [the Plaintiff's] opinion regarding racism in America is correct (her assertion that systemic racism exists in this country is, after all, a tough one to refute), it is not evidence in this

5

case nor is it relevant to any issue in the case. [Her] lengthy recitations about systemic racism are a political argument, not a legal one." ECF No. 28. Thus, the Court limits its analysis to whether the Plaintiff has offered sufficient evidence of race discrimination to survive summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Yeatts*, 940 F.3d at 358. A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although a court

construes a pro se party's filings liberally, "pro se litigants are subject to the same substantive legal rules as represented parties." *Balle v. Kennedy*, 73 F.4th 545, 553–54 (7th Cir. 2023) (citing *Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023); *Famous v. Fuchs*, 38 F.4th 625, 631 n.22 (7th Cir. 2022)).

## MATERIAL FACTS

Plaintiff Sandra Black entered into a Lease Agreement (Lease) with Hunter's Run Apartments LP (Hunter's Run) on November 23, 2015, for the apartment located at 655 E. Hunters Run Drive, Marion, Indiana, 46953 (the Apartment). *See* Def. Ex. A.[2] The Plaintiff is Black. *See* Compl. 1–4. Pursuant to the Lease, the following persons had a right to occupy the Apartment: the Plaintiff, Kemuel Shem, Chrisdeon Ogunbuyide, Victoria Goree, and Christian Goree. Def. Ex. A, ¶ 4.

Correspondence from Hunter's Run to the Plaintiff dated October 3, 2016, discusses the work done to fix the Plaintiff's HVAC unit. Def. Ex. G. In April 2017, Hunter's Run called the Marion Police Department because the Plaintiff refused to leave the Hunter's Run Leasing Office. Def. Ex. B.

On May 23, 2017, Hunter's Run filed a complaint for possession in small claims court in the Grant County, Indiana, Superior Court, in cause number 27D03-1705-SC-000517. ECF No. 15-4, p. 1. Hunter's Run alleged it was entitled to possession of the Apartment for "Violation of Lease Agreement – allowing unauthorized occupants to live at the apartment." *Id.*

On May 24, 2017, the Plaintiff filed a Complaint of Discrimination with the Indiana Civil Rights Commission (ICRC) against the Defendants, alleging that she was threatened with eviction on December 5, 2016, based on her race in violation of the Indiana Civil Rights Law,

---

[2] The Defendants exhibits are located at docket entry 216.

the Indiana Fair Housing Act, the Fair Housing Act, and Title VII of the Civil Rights Act of 1968. ECF No. 15-9. She alleged that she was harassed and threatened with eviction after requesting maintenance repairs; she was accused of not cleaning up after her dog; she was intimidated and talked down to when she called the office to make a maintenance repair request and Naomi Friedrichsen would yell at and talk down to her like a child; she was directed to submit all of her maintenance requests in writing; her Caucasian neighbor "Tonya" did not have to submit her requests in writing; and she believed the Defendants treated Caucasian tenants more favorably. *Id.*

On May 31, 2017, the Plaintiff filed a jury demand and attempted to file a counterclaim in the pending small claims court action. ECF No. 15-4, pp. 2, 3. On June 2, 2017, Hunter's Run filed an Amended Complaint for Possession of Real Property against the Plaintiff, alleging that the Plaintiff (1) allowed unauthorized occupants to reside at the Apartment; (2) violated the Automobile and Parking Areas Lease provision; and (3) violated the Resident Responsibilities Lease provision. ECF No. 15-1. On June 5, 2017, the small claims case was transferred to a civil plenary case in the Grant County, Indiana, Superior Court under cause number 27D03-1706-PL-000014. ECF No. 15-4, p. 2. On June 14, 2017, the court entered a nine-page order denying Hunter's Run's request for a Prejudgment Order of Possession and making a "preliminary finding that there is a reasonable probability [the Plaintiff] is entitled to the continued possession, use and enjoyment of her apartment." *See* ECF No. 15-4, p. 1. Along with other factual findings, the court made a preliminary finding that Hunter's Run "did not prove that other persons occupied the Apartment than were permitted by Paragraph 4 and 5 of the Lease." *Id.* at 4.

On August 2, 2017, the Plaintiff and Hunter's Run entered into a Joint Agreement of Parties (Joint Agreement) wherein Hunter's Run agreed to allow Kemuel Shem, Jacee Shem, and

Naomee Shem to reside at the Apartment in exchange for the Plaintiff agreeing to vacate the Apartment on or before September 21, 2017. *See* ECF Nos. 15-5, 15-6, 15-7. On September 22, 2017, the state court granted Hunter's Run's motion to dismiss its claim against the Plaintiff, ECF No. 15-8.

On March 26, 2018, the ICRC dismissed the Plaintiff's May 24, 2017 Complaint of Discrimination with prejudice. ECF Nos. 15-10, 15-11.

Naomi Friedrichsen was the Senior Community Manager for Hunter's Run. Def. Ex. G. The Plaintiff testified that she found offensive the tone Ms. Friedrichsen used to talk to her. Def. Ex. C-1, 242:17–20, 243:3–8. "It was the idea that it was belittling, and it was the idea that you didn't care–." *Id.* at 243:9–10; *see also* Def. Ex. C-1, 284:25–Def. Ex. C-2, 286:18. The Plaintiff testified that Naomi did not use the "N word" but talked to the Plaintiff like she "[didn't] know what she was talking about." Def. Ex. C-2, 285:18–22, 286:11–12; *see* Def. Ex. C-1, 243:3–12 ("Not the words. It was her tone."); Def. Ex. D, ¶ 3.

When asked at her deposition to identify a tenant of Hunter's Run outside her protected class whom the Defendants treated more favorably than her, the Plaintiff identified by name only Tawnya Seacott. Def. Ex. C-1, 117:25–118:23; *see also* Def. Ex. C-2, 309:4–9. This was based on Ms. Seacott allegedly having unauthorized occupants living in her apartment but not receiving a lease violation notice. Def. Ex. C-3, 380:4–8. The Plaintiff testified that Ms. Seacott told the Plaintiff she thought the Plaintiff was being treated differently than her regarding visitors. *See* Def. Ex. C-1, 104:16–105:14, 111:8–113:20; *see also* Def. Ex. E, Resp. ¶ 3. When the Plaintiff was asked to explain why she believed Hunter's Run knew about this alleged lease violation by Ms. Seacott, the Plaintiff testified that Ms. Seacott assumed Hunter's Run knew. Def. Ex. C-1, 112:7–113:20; Def. Ex. C-2, 307:3–308:14; Def. Ex. C-4, 386:9–21, 387:12–21.

Ms. Seacott executed an affidavit averring that Hunter's Run did not permit her to have unauthorized occupants in her apartment. *See* Def. Ex. F. She provides details of the years that her daughter and grandchildren lived in the apartment with her as "Authorized Occupants" listed in the Lease. *Id.* ¶¶ 3–6. She states, "At no point during the Lease Term did anyone other than the Authorized Occupants reside at the Apartment." *Id.* ¶ 8. She adds that she never advised either the Plaintiff or any employee or agent of Hunter's Run that anyone other than "Authorized Occupants" resided at her apartment. *Id.* ¶¶ 9–10.

## SUMMARY JUDGMENT ANALYSIS

The Fair Housing Act (FHA), also known as Title VIII of the Civil Rights Act of 1968, allows an "aggrieved person" to file a civil action in federal court. *See* 42 U.S.C. § 3613(a)(1). The FHA defines an "aggrieved person" as "any person who– (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 3602(i). "Discriminatory housing practice" is defined as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of" Title 42. *Id.* § 3602(f).

The Plaintiff alleges race discrimination by the Defendants in violation of the FHA, contending that the Defendants targeted her based on her race and falsely accused her of lease violations to force her to vacate the apartment. Construing her pro se complaint liberally, the Court understands the Plaintiff as bringing a disparate treatment claim under § 3604, a constructive eviction claim under § 3604, and interference and hostile housing claims under § 3617. The Defendants argue that they are entitled to summary judgment on all claims because the Plaintiff cannot demonstrate a discriminatory motivation by any defendant, identify anyone

10

similarly situated outside her protected class who was treated differently, show severe or pervasive harassment, or demonstrate constructive discharge.

To survive summary judgment on each of these claims, the Plaintiff must produce evidence that, considered as a whole, would allow a reasonable jury to find that the Defendants treated her differently because of her race. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (explaining, on a Title VII employment discrimination claim, that the record evidence "must be considered as a whole" to determine whether the plaintiff suffered an adverse employment action due to a protected characteristic); *Kormoczy v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Briggs*, 53 F.3d 821, 823–24 (7th Cir. 1995) (explaining that the elements of FHA discrimination claims under § 3604 "follow closely the elements of employment discrimination"). In the alternative, the Plaintiff can proceed under the familiar *McDonnell Douglas* burden shifting method to create an inference of discrimination by showing that she was treated less favorably than similarly situated individuals not a member of her protected class. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *East-Miller v. Lake Cnty. Highway Dep't*, 421 F.3d 558, 563 (7th Cir. 2005) (citing *Kormoczy*, 53 F.3d at 823–24).[3]

### A.  Section 3604(b) Disparate Treatment Based on Race

Under § 3604(b), the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or

---

[3] Under the *McDonnell Douglas* burden shifting test, a plaintiff responding to summary judgment must first establish a prima facie case "by showing that (1) he is a member of a protected class, (2) he was meeting the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not members of his protected class were treated more favorably." *Reives v. Ill. State Police*, 29 F.4th 887, 891 (7th Cir. 2022); *see Watters v. Homeowners' Ass'n at the Pres. at Bridgewater*, 48 F.4th 779, 789 (7th Cir. 2022) (assessing the prima facie case in an FHA action). Once the prima facie case is established, "the burden shift[s] to the defendant to articulate a legitimate, non-discriminatory reason for the" challenged conduct. *Reives*, 29 F.4th at 891. "[T]he burden [then] shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.*

facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). For a disparate treatment claim, a "plaintiff must establish that the defendant had a discriminatory intent or motive." *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 524–25 (2015) (quoting *Ricci v. DeStefano,* 557 U.S. 557, 577 (2009)).[4]

The Defendants argue that the Plaintiff cannot prevail on a § 3604 disparate treatment claim based on race because she has no evidence of a discriminatory intent on behalf of any Defendant—a required element of the claim. *See Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009). In her deposition, the Plaintiff testified that she did not like the way Naomi Friedrichsen, Hunter Run's Senior Community Manager, talked to her because of the tone of Ms. Friedrichsen's voice and because Ms. Friedrichsen treated the Plaintiff like the Plaintiff did not know what she was talking about. However, there is nothing inherently race-based about the way Ms. Friedrichsen talked to the Plaintiff nor is there evidence from which a reasonable jury could infer such an intent from her tone. The Plaintiff testified that Ms. Friedrichsen never used the "N word" or made any directly derogatory statements. *Cf. East-Miller*, 421 F.3d at 563 (recognizing that racial slurs can create an inference of race discrimination). Without more, this evidence is insufficient to create a genuine dispute of material fact regarding discriminatory intent.

The Plaintiff also fails to identify a similarly situated individual outside her class who was treated more favorably. Such evidence could support her assertion of intentional discrimination either when the evidence is viewed as a whole or as an element of the prima facie

---

[4] In contrast, a disparate impact claim challenges "practices that have a 'disproportionately adverse effect on minorities' and are otherwise not justified by a legitimate rationale." *Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 524–25 (quoting *Ricci,* 557 U.S. at 577). "Disparate-impact analysis looks at the effects of policies, not one-off decisions, which are analyzed for disparate treatment." *City of Joliet v. New W., L.P.*, 825 F.3d 827, 830 (7th Cir. 2016). Here, there are no allegations or evidence that would support a disparate impact claim.

case under the *McDonnell Douglas* burden shifting method. Throughout her filings in this litigation, the Plaintiff has alleged that Tawnya Seacott, a Caucasian tenant, was a similarly situated individual outside of her class who was treated more favorably by the Defendants.[5] The Plaintiff alleges the Defendants allowed Ms. Seacott to have unauthorized occupants reside in her apartment whereas the Defendants initiated eviction proceedings against the Plaintiff for allegedly having unauthorized occupants living in her apartment. However, the Plaintiff has offered no evidence in response to summary judgment to support these allegations.

The Plaintiff testified she has no personal knowledge that the Defendants knew unauthorized occupants were allegedly living in Ms. Seacott's apartment. And she has offered no evidence that the Defendants knew of any such alleged unauthorized occupants. The Plaintiff's testimony that Ms. Seacott assumed Hunter's Run knew about alleged unauthorized occupants in Ms. Seacott's apartment is mere speculation insufficient to overcome summary judgment. In contrast, the Defendants offer Ms. Seacott's affidavit statements that "[a]t no point during the Lease Term did anyone other than the Authorized Occupants reside in the Apartment" and that she never advised either Sandra Black or any employee or agent of Hunter's Run "that anyone other than the Authorized Occupants resided in the Apartment." Thus, the Plaintiff has not offered evidence to show that any other individuals outside her protected class were treated more favorably by the Defendants.

In her response brief, the Plaintiff contends that she has "overwhelming evidence against the defendants['] claim." ECF No. 218, pp. 2–3. To the extent she is challenging the factual basis of the state court eviction proceedings, which were initially based on her allegedly having

---

[5] In her response brief, the Plaintiff asserts that there was another Caucasian tenant, Ilsa Muers, who was given a "blind eye treatment" regarding various violations. ECF No. 218, pp. 3–4. However, the Plaintiff offers no evidence in support.

unauthorized occupants in her apartment, the issue in this lawsuit is her allegations of discrimination under the FHA and not the merits of the Defendants' state court complaint for eviction. The Plaintiff believes the Defendants filed the state court eviction complaint based on her race. But as set forth above, she has not offered evidence of such discrimination or evidence that would allow such an inference.

Because the Plaintiff has failed to identify evidence from which a reasonable inference of race discrimination could be inferred, the Court grants summary judgment for the Defendants on her § 3604(b) disparate treatment claim both when considering the evidence as a whole and under the *McDonnell Douglas* burden shifting test.

**B.      Section 3617 Interference and Hostile Housing Environment Claims**

Under the FHA, it is illegal "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. A plaintiff bringing a § 3617 claim must show "that (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Bloch*, 587 F.3d at 783 (citing *East-Miller*, 421 F.3d at 563). "[A] showing of intentional discrimination is an essential element of a § 3617 claim." *East-Miller*, 421 F.3d at 563.

The Seventh Circuit has recognized a hostile housing environment cause of action under the FHA. *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996), cited in *Bloch*, 587 F.3d at 779, 783; *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861–62 (7th Cir. 2018).

14

Courts have considered such a claim as brought under § 3604(b) and § 3617. *See Watters v. Homeowners' Ass'n at the Pres. at Bridgewater*, 48 F.4th 779, 786–88 (7th Cir. 2022); *Wetzel*, 901 F.3d at 861; *Bloch*, 587 F.3d at 783; *Evans v. 210 E. Pearson Condo. Assoc.*, No. 21-CV-3941, 2023 WL 2711613, at *3–4 (N.D. Ill. Mar. 30, 2013). "A hostile-housing-environment claim requires a plaintiff to show that: (1) she endured unwelcome harassment based on a protected characteristic; (2) the harassment was severe or pervasive enough to interfere with the terms, conditions, or privileges of her residency, or in the provision of services or facilities; and (3) that there is a basis for imputing liability to the defendant." *Wetzel*, 901 F.3d at 861–62 (citing *DiCenso*, 96 F.3d at 1008). "Harassment is severe or pervasive if it objectively interferes with the enjoyment of the premises or inhibits the privileges of rental." *Id.* at 862. To determine whether the conduct is "severe or pervasive enough," the Court looks to "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, and whether it is physically threatening or humiliating rather than merely offensive." *Id.* at 862.

As set forth in Part A above, the Plaintiff has not offered evidence from which an inference of race discrimination could be made in relation to the Plaintiff's residency at Hunter's Run, including her allegations that she was harassed based on her race. *Cf. Fair Housing Ctr. of Cent. Ind., Inc. v. New*, 577 F. Supp. 3d 908, 914–18, 925 (S.D. Ind. 2021) (finding that the evidence, which included frequent racially hostile harassment by a neighbor, "could permit a reasonable fact finder to conclude that a hostile housing environment based upon race and national origin existed at Twin Creeks"). Thus, her claims under § 3617, including her hostile housing environment claim, must fail.

The Plaintiff also has not offered evidence of "severe or pervasive" harassment. Based on her deposition testimony, the events comprising the alleged harassment include that Ms.

Friedrichsen talked to her like a child, the Defendants failed to fix her air conditioning unit in a timely manner, Defendant Erika Holiday called the police on her for no reason, and she was given a final warning for a pet violation with no intermediate warnings. Def. Ex. C-1, 240:1–243:12. Even taking these allegations as true, which the evidence appears largely to contradict, *see* Def. Exs. B, G, these incidents are neither frequent nor severe. Although having the police called could be considered humiliating in a general sense, it was an isolated incident with no evidence of race-based motivation. *Cf. Watters*, 48 F.4th at 787–88 (finding that a reasonable factfinder could infer that being treated with racial disdain and hostility by the head of the HOA and his wife, which included two uses of the N-word by one of them and the other using racially hostile inuendo, "can directly affect how safe a family feels in their own home" and that the repeated harassment undermined the plaintiffs' "ability to enjoy the basic living conditions one expects when they purchase a home." (citing *Bloch*, 587 F.3d at 782)); *Wetzel*, 901 F.3d at 862 (finding, on a motion to dismiss, that the alleged harassment could "plausibly . . . be viewed as both severe and pervasive" when "[f]or 15 months, she was bombarded with threats, slurs, derisive comments about her family, taunts about a deadly massacre, physical violence, and spit"); *Small v. The Anchorage Homeowners Assoc.*, No. 1:18-cv-1605, 2019 WL 1317636, at *8 (S.D. Ind. Mar. 21, 2019) (finding that "allegations [that] include religious slurs, threats of violence, efforts to oust Plaintiffs from their residence, complaints to the police, efforts to humiliate Plaintiffs in front of their friends and clients, and erecting a physical barrier that adversely affected Plaintiffs' enjoyment of their residence . . . cross the line").

Accordingly, the Court grants summary judgment for the Defendants on the Plaintiff's claims under § 3617.

C.  **Constructive Eviction**

"Deprivation of [the right to inhabit the premises] by making the premises uninhabitable violates § 3604(b)." *Bloch*, 587 F.3d at 779. To show constructive eviction, a plaintiff "must show her residence is 'unfit for occupancy,' often to the point that she is 'compelled to leave.'" *Id.* at 777 (quoting Black's Law Dictionary 594 (8th ed. 2004)). "Availability, not simply habitability, is the right that [is protected]." *Id.* at 777 (§ 3604(a)), 779 (§ 3604(b)).

Here, the Plaintiff has failed to submit evidence to create a genuine dispute of fact that she was forced out of her apartment because of the Defendants' racial discrimination. The evidence demonstrates that the Plaintiff and the Defendants entered into a Joint Agreement that allowed the Plaintiff to remain in her apartment for approximately 60 days with unauthorized occupants residing in the apartment on the condition that she vacate the apartment by a date certain. In other words, the Plaintiff voluntarily agreed to move out of her apartment. Earlier in these proceedings, the Court denied the Defendants' motion to dismiss this constructive eviction claim, recognizing at that stage of the proceedings there was a question of fact whether the Plaintiff's agreement was truly voluntary considering her allegations of harassment and of Caucasian residents being treated more favorably. ECF No. 28, p. 29. Now, at the summary judgment stage, the Plaintiff has failed to offer the evidence necessary to demonstrate intentional discrimination or a hostile housing environment based on race that would support an inference that her participation in the Joint Agreement was not voluntary based on that discrimination. The Court grants summary judgment for the Defendants on the constructive eviction claim.

## CONCLUSION

For the reasons set forth above, the Court hereby (1) DENIES the "Part 2 Jim Crow Court: Motion for Judge Springmann to Disqualify or Remove Discriminatory, Bias and

17

Fraudulent Acts, See Citing IV" [ECF No. 230] and (2) GRANTS the Defendants' Motion for Summary Judgment [ECF No. 215].

The Court DIRECTS the Clerk of Court to enter judgment for the Defendants Naomi Friedrichsen, Erika Holiday (Liddick), Hunters Run Apartments and Owners, and Interstate Realty Management Co. and against the Plaintiff Sandra Black.

SO ORDERED on September 6, 2023.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT